72 So.2d 538 (1954)
SIMMS
v.
LAWRENCE BROS. et al.
No. 8043.
Court of Appeal of Louisiana, Second Circuit.
April 22, 1954.
Rehearing Denied May 26, 1954.
*539 Cotton & Bolton, Rayville, for appellant.
Joseph S. Guerriero, Monroe, for appellee.
AYRES, Judge.
Plaintiff instituted this suit against Lawrence Brothers, an alleged partnership, and its alleged members, Claude E. Lawrence and Byron W. Lawrence, for damages as the result of an accident occurring about 3:00 a. m., December 9, 1952, near the intersection of Highways 15 and 47, not far from the Village of Archibald in Richland Parish. The damages claimed are itemized as $1,098.54 to plaintiff's truck, $350 to the load of lumber thereon, and $800 for the loss of the use of the truck for a period of sixty days.
Both trucks involved were large trucks. That of the plaintiff, including the trailer, was loaded with approximately 16,000 feet of kiln-dried, planed lumber, having a load weight in excess of 45,000 pounds and loaded to a height of six feet on the truck-trailer combination. The defendant's truck was loaded with merchandise from defendant's foundry at Bastrop, destined for Baton Rouge.
The accident, as stated, occurred near the intersection of the aforesaid highways. Highway 47 takes a general north and south course from Rayville to Winnsboro and beyond; Highway 15 runs generally southeast from Monroe and, as originally constructed, intersected Highway 47 at right angles. Both highways are hardsurfaced highways. However, the triangle adjacent to the southwest corner of said intersection has been asphalted or black-topped from a point on the south side of Highway 15 approximately one hundred to one hundred twenty-five feet west of the original intersection, curving to a point presumably about the same distance south of said intersection on the west side of Highway 47. Although remaining a sharp curve and turning to the right, as plaintiff's truck was proceeding, this widening of the intersection eliminated the complete right angle turn as originally constructed. A filling station was situated in this curve off the right of way to the south, the black-top approaching within a few feet of the station.
It is alleged and shown by the evidence that the driver of defendant's truck, George Dunnaway, had proceeded south from the Town of Rayville on Highway 47 and, on reaching this intersection, drove the truck off said highway and towards the filling station, stopped and parked it in or near the middle of said curve, the back end extending into and partially blocking Highway 15. This truck was parked without headlights, rear lights or lights on the cab, and the driver failed to place any flares, lights, flags or other warning devices to warn the public of the truck's presence across the highway. The driver was intoxicated, reclining on the seat and asleep, where and in which condition he remained oblivious to all subsequent occurrences until the sheriff, after having been awakened a half mile away by the noise of the accident, appeared and aroused him.
Plaintiff's driver proceeded on Highway 15 towards said intersection at a moderate rate of speed and with due circumspection and with proper regard for the condition of the weather as a dark, foggy, misty night. After entering this curve, he was confronted with defendant's truck parked, as aforesaid, without lights or flares or other warnings, and with insufficient room *540 to pass to its right between it and the service station. Whereupon, he attempted to avoid, and did avoid, an actual collision, by turning and attempting to pass the parked truck to its left, and thereupon, due to the presence of a ditch, to which he was then headed, it became necessary to turn suddenly to the right. This maneuver precipitated his load's shifting to the left, causing the truck and trailer to become overbalanced and overturned with considerable damage to truck and trailer and cargo by breaking up and depositing a portion of the lumber in the water-filled ditch.
It is alleged and contended that, in the particulars detailed hereinabove, defendant's driver was guilty of gross recklessness, carelessness and negligence, constituting the proximate cause of the accident.
At the outset of the trial, it was stipulated that no firm by the name of Lawrence Brothers existed but that Claude E. Lawrence, one of the parties made defendant, was the sole owner of the Bastrop Foundry and of the truck and merchandise being transported and that if any liability existed it would be against Claude E. Lawrence only and against whom, as the sole defendant, the matter would proceed.
This defendant alleged that on the 9th of December, 1952, he employed one Edward McGalhey to driver his truck from Bastrop to Baton Rouge and that it was without his knowledge that McGalhey was unable to make the trip, and without his knowledge or consent that McGalhey secured the services of Dunnaway. Defendant denied that he was responsible in any way for the acts of said George Dunnaway and alleged that the accident was caused solely and only by the negligence of plaintiff's driver in failing to observe the highway stop sign and in operating said truck, without keeping a proper lookout, at an improper and illegal rate of speed and without proper control. In the alternative, defendant plead contributory negligence on the part of plaintiff's employee in bar of plaintiff's right to recover.
The trial judge, after briefly summing up the facts, as we have attempted in more detail, found that the driver of the parked truck was guilty of negligence, but concluded that plaintiff's driver had violated the rules of the road by not coming to a full stop before reaching the intersection and by driving too fast, considering the vehicle he was operating. From the judgment rejecting his demands and dismissing his suit, plaintiff prosecutes a devolutive appeal to this court.
Inasmuch as the amount sued for exceeds the constitutional limitation of the jurisdictional amount of this court, the first question presented for our determination is that of our jurisdiction in this case. Of the three items making up plaintiff's claim, one involves $800 for the loss of the use of the truck involved in the accident. An estimate of the damages to the truck was promptly obtained by plaintiff, who, however, neglected and failed to have the repairs made, finally disposing of the truck, probably for little more than its salvage value. In view of the meager proof offered and considering that the truck for all practical purposes was destroyed, plaintiff could hardly have hoped to have recovered on this item. Consequently, we are of the opinion that the total of the claim sued on is inflated by an amount which, when deducted, brings the amount sued for within the jurisdiction of this court. This is a matter which this court can take judicial cognizance of, and we will, therefore, entertain jurisdiction of the appeal and decide the questions at issue.
Our position on this question is supported by these authorities: Muse v. Muse, La.App., 33 So.2d 128; Sturm v. Hutchinson, La.App., 37 So.2d 45; Wall v. United Gas Public Service Co., La.App., 171 So. 497; Southland Inv. Co., Inc., v. Michel, La.App., 150 So. 581, 582. In the latter case, this court said:
"The amount in dispute determines the jurisdiction of the court, and it is not bound to accept allegations as to the amount in controversy, but will look into the record to ascertain the real amount in dispute. Wagner v. New Orleans Ry. & Light Co., 151 La.

*541 400, 91 So. 817; Ducharme v. Smith, 9 La.App. 264, 119 So. 268; Southern Furn. Co. v. Mead (La.App.), 146 So. 341; Williamson v. Ruston Steam Laundry, 17 La.App. 141, 134 So. 720".
On the question of defendant's responsibility for the acts of the driver of his truck, we are unable to agree with the defendant on this point under the facts and circumstances as shown in the record. Defendant testified that he employed Edward McGalhey to drive his truck on the occasion in question with a load of merchandise from Bastrop to Baton Rouge; that, without his knowledge or consent, that party secured the services of George Dunnaway. McGalhey's testimony corroborated the defendant in this respect. Dunnaway admittedly was formerly and recently in the service of the defendant, doing and performing work of this and of a similar kind and nature. He was actually rendering service for the defendant on this occasion. He was related to the defendant, and for some reason unaccounted for in the record, he was not produced as a witness.
Volume 9, Part 2, Blashfield's Cyclopedia of Automobile Law and Practice, Pages 398 and 399, § 6065, states the presumption and general rule as to agency and scope of employment in the operation of a motor vehicle as follows:
"In many motor vehicle accident cases, the plaintiff experiences difficulty in proving the status of the driver as a servant or agent of the owner. In making a prima facie case, this status may, in some jurisdictions, be established by the presumption that, where one is in the possession of an automobile of another and is using it in the service of such other, he is a servant or agent of the owner.
"In such jurisdictions, proof of ownership has been held to justify an inference that the driver was the agent or servant of the owner and that he was operating the car, at the time of the accident, in pursuit of the owner's business and within the scope of the driver's employment".
It was held in the case of Norman v. Little, 14 La.App. 298, 129 So. 459, 460, that where a defendant admitted the ownership of an offending automobile, the presumption is that the driver was the owner's agent and that the driver was acting within the scope of such agency; too, that where a truck bore the name under which the defendant did business, the driver was presumed to be an employee of the defendant and presumed to be acting within the scope of his employment. This court recognized these principles in the case of Coon v. Monroe Scrap Material Co., La.App., 191 So. 607, 609, 610, wherein it was stated:
"Ownership of a motor vehicle at fault in an accident, does not necessarily cinch responsibility for results upon the owner; but an inference of responsibility arises from proof of such ownership. This inference, dependent upon the character of the proof supporting or traversing it, grows stronger or weaker. And when such proof, as is true in this case, goes far towards establishing that the operator of the offending vehicle was on a mission for the owner, the inference takes on a status, nearly, if not wholly, equal to conviction, to overcome which evidence of unusually strong and convincing character needs to be adduced".
The presumptions flowing from ownership and service of the motor vehicle in such cases as here presented are rebuttable presumptions which may be disproved by the defendant. However, the evidence offered by the defendant in this case is not, in our opinion, of such unusually strong and convincing character as would overcome the presumptions. We are, therefore, constrained to hold that Dunnaway was in the service of, and was the agent and employee of, the defendant in driving the truck on the occasion in question.
Appellant argues convincingly that defendant's driver was grossly negligent in parking upon the much traveled Highway No. 15 near its junction with Highway *542 No. 47 in the manner and under the circumstances as hereinabove detailed, without observing the provisions of LSA-R.S. 32:241, subds. A and B, which provide:
"A. No person shall park any vehicle, attended or unattended, upon the main traveled portion of any highway, outside of a business or residence district, when it is practicable to park it off the main traveled portion of the highway. In no event shall any person park a vehicle, attended or unattended, upon a highway unless an unobstructed width of not less than fifteen feet upon the main traveled portion of the highway opposite such parked vehicle is left free for passage of other vehicles, nor unless a clear view of such vehicle exists from a distance of at least two hundred feet in each direction upon the highway. Even then, if such vehicle is left parked, attended or unattended, one half hour after sunset or one half hour before sunrise, the person parking it shall display appropriate signal lights thereon, sufficient to warn approaching traffic of its presence.
"Whenever any police or traffic officer finds a vehicle parked upon a highway in violation of this Section, he is authorized to move it, have it moved, or to require the person in charge of such vehicle to move it to a position permitted under this Section.
"B. The provisions of this rule shall not apply to the driver of any vehicle which is disabled while on the main traveled portion of a highway so that it is impossible to avoid stopping and temporarily leaving the vehicle in that position. However, the driver shall remove the vehicle as soon as possible, and until it is removed it is his responsibility to protect traffic".
There is no doubt that the statute was violated in that there were no lights on the parked vehicle, no flares set out, and no flagman to warn approaching traffic. Moreover, the driver was not in position to warn the traffic as he was intoxicated and completely unaware of what was taking place. The statute is mandatory that adequate flares and warnings be set out for the protection of other traffic. It was so held in Rea v. Dow Motor Co., La.App., 36 So.2d 750, 756; Columbia Fire Ins. Co. v. Black, La.App., 61 So.2d 534, 538; and we have no difficulty in concluding, as the trial judge did, that the non-observance of said statute constituted negligence.
We find ourselves, however, unable to agree with the trial court that plaintiff's driver was guilty of contributory negligence. The evidence establishes, to our minds, that the driver was proceeding with due and adequate precaution at a slow and reasonable rate of speed, with due regard to the facts and circumstances as to the highway intersection and the turn and change of course of direction. His action in averting a direct collision with the truck parked on a dark, foggy, misty night, in the middle of a short, sharp curve such as this, without lights or flares of any kind or nature, is convincing evidence that he was vigilant, keeping a proper lookout and using due diligence. Had he not maneuvered his truck so as to avoid a direct collision, the consequences perhaps would have been much greater. The driver's speed generally on the highway at approximately thirty-five miles per hour, and at a greatly reduced speed as he approached the intersection was not excessive even considering the enormous load carried by the truck and trailer. At his reduced rate of speed to approximately ten to fifteen miles per hour, with the distance to be traveled before reaching Highway 47, the driver had sufficient time and opportunity to bring his truck to a full stop before entering such other highway. Therefore, it is of no moment or importance that he had already passed signs calling attention to the intersection. It would appear that he substantially gave due consideration to those signs.
Under these facts and circumstances, was plaintiff's driver in any wise negligent or was he exercising such a lookout and an alertness in maintaining such speed and control of his car as one would expect of a reasonably careful driver? It is our opinion *543 that he was not negligent. He could not have been expected, under these facts and circumstances, to have seen the truck parked and avoided the accident. In avoiding a collision with the parked truck, he drove to the left, but was then confronted with an open ditch, and, to prevent running into it, was forced to drive sharply to the right, overbalancing and overturning his truck and trailer. If the law requires more, it is against the experience of life and asks too much of a human being. In our opinion, he was operating as the average, careful driver who drives upon the highway. The accident was due to the negligence of George Dunnaway, who parked the truck in the highway, and that negligence was the proximate cause of the accident and the damages resulting therefrom.
This case presents an exception to the general rule that a motorist must see or he will be held to have seen all objects sufficiently large to interfere with traffic on his side of the highway within the distance well illumined by the lights of his car; and that he will be excused for not having seen such object unless the failure be due to lack of care and vigilance, in the determination of which, all physical, atmospheric and other pertinent conditions should be given proper weight and consideration. The case, as we view it, comes within this doctrine announced and followed in these cases: Gaiennie v. Cooperative Produce Co., Inc., 196 La. 417, 199 So. 377, Rea v. Dow Motor Co., La.App., 36 So.2d 750, 757, Cole v. Burgess, La.App., 31 So.2d 450, and Warnick v. Louisiana Highway Commission, La.App., 4 So.2d 607.
It, therefore, follows that defendant should respond to plaintiff for such damages as plaintiff sustained. The evidence establishes the damages to the truck and trailer at $1,098.54 and to the lumber in the sum of $350, or a total of $1,448.54. Plaintiff has not sufficiently established his claim to or presented facts to show he is entitled to recover damages for the loss of the use of the truck.
For the reasons hereinabove assigned, the judgment appealed from is reversed and set aside, and there is now judgment in favor of the plaintiff, L. M. Simms, against the defendant, Claude E. Lawrence, for the full sum of $1,448.54, with five percent per annum interest thereon from judicial demand until paid, and for costs in both courts.