AYRES, Judge.
This is an action for damages' arising out of a motor vehicle collision of August 13, 1965, at the intersection of East Kings Highway and Youree Drive Extension, two principal thoroughfares in the City of Shreveport. Involved were a police vehicle driven by Fred G. Longoria, a police officer of the City of Shreveport, accompanied by Roy H. Lowery, a member of the Civil Defense, at the time a volunteer police officer of the city, and a Chevrolet station wagon of Lana K. Taylor.
Made defendants were Lana K. Taylor and her insurer. Because of inability to get service upon Miss Taylor, a nonsuit was entered as to her. The City of Shreveport intervened and claimed, as a self-insurer of its employees, reimbursement of medical expenses incurred in the treatment of the injuries sustained by its officers, and sought to recover further judgment for the damages inflicted upon its patrol car.
From a judgment predicated upon a jury verdict in favor of Longoria for $5,000.00 and in favor of Lowery for $10,000.00, with deductions therefrom of $334.00 and $1,-733.35, respectively, ordered paid to in-tervenor in reimbursement of medical expenses, the defendant appealed.
No issue is presented as to the cause of the accident. The police officers were proceeding westerly on East Kings Highway. After stopping in obedience to a red light, upon a change of signals they proceeded into the intersection and reached the western, or southbound, traffic lane of Youree Drive Extension when the right side of their vehicle was struck by Miss Taylor’s vehicle proceeding south into the intersection against a red light.
Defendant concedes on appeal that its assured’s station wagon was involved in the accident. That Miss Taylor was driving the vehicle is denied. It is not claimed anyone else was in charge of its operation.
Defendant contends plaintiffs have not established, bv a preponderance of evidence, that its assured was the driver of the vehicle at the time ot the accident. This issue is primarily a question of fact which was resolved by the jury against the defendant after the jury had seen the witnesses and heard their conflicting testimony.
Miss Taylor claimed her car was stolen from the Orbit Lounge, located on Barks-dale Boulevard in Bossier City, Louisiana. She testified to have been driven back to Barksdale Air Force Base by a friend whose name she did not remember. She admitted, however, that she had driven a friend or friends across the river to Shreveport. She additionally admitted, as Jerry Shillings testified, being at the Ko-Ko-Mo Drive-In on East Kings Highway in the City of Shreveport. Shillings testified that sometime after 10:30 p. m. Miss Taylor approached his car at the drive-in and requested and obtained his services in returning her to the Orbit Lounge in Bossier City. He described her mode of dress as a black leotard. This was the manner of dress described by her as a witness on the second day of the trial.
The accident occurred approximately two blocks from the Ko-Ko-Mo Drive-In. The station wagon was found about three blocks from the scene. No witnesses were presented to corroborate Miss Taylor’s claim that her car was stolen. In responding to a call from an investigating officer, she appeared the following day and explained her car had been stolen. No prior report had been made.
*95 The defendant contends plaintiffs and their witnesses failed to' identify Miss Taylor as the driver of the car. Anne Neilson, comparing favorably in height, size, and appearance with Miss Taylor, was seated behind defense counsel. When asked to point out the driver of the station wagon, witnesses generally, with some reservation or uncertainty at first but more positively when pressed under cross-examination, pointed out Miss Neilson. However, in rebuttal, after Miss Taylor had been called as a witness, plaintiffs’ witnesses made positive identification of Miss Taylor as the driver of the offending vehicle.
In resolving the issue under the testimony, we find no basis for substantial disagreement with the conclusion reached by the jury. However, if any doubt exists as to the correctness of the findings on a basis of the testimony offered, such doubt would be dispelled in viewing the testimony under the well-established principle that while ownership of a motor vehicle at fault in an accident does not necessarily cinch responsibility for the results upon the owner, an inference of responsibility arises from proof of such ownership, and evidence of unusually strong and convincing character needs to be adduced to overcome such inference. Simms v. Lawrence Bros., 72 So.2d 538 (La.App., 2d Cir. 1954); Coon v. Monroe Scrap Material Co., 191 So. 607 (La.App., 2d Cir. 1939 — cert. denied); Norman v. Little, 14 La.App. 298, 129 So. 459 (Orl.1930).
The defendant attacks the awards made to both plaintiffs as excessive and seeks their reduction.
Longoria initially complained of only minor injuries, causing headaches and a painful arm. He continued in his employment as a member of the police department without loss of time. However, on September 13, 1965, a month following the accident, he sought medical attention for the first time and called upon Dr. Charles Nash, whose examination disclosed that he had sustained a mild to moderate cervical sprain.
Plaintiff remained under Dr. Nash’s treatment until February 21, 1966, when he was referred to Dr. E. C. Simonton for orthopedic examination and treatment. Dr. Simonton’s diagnosis was generally in accord with that of Dr. Nash. He found slight muscle spasm in plaintiff’s cervical area and tenderness in the upper thoracic region. Plaintiff was fitted with a cervical collar, administered heat treatments, and given muscle relaxants. An opinion was expressed that he had sustained a mild cervical sprain from which he was making satisfactory progress toward recovery when he was involved in another accident February 23, 1966. The injuries sustained in the latter accident were said to have aggravated plaintiff’s prior injuries and prolonged his recovery. Nevertheless, Dr. Simonton found that plaintiff had, by July 1, 1966, recovered without residual disability.
In a settlement, plaintiff received the sum of $1,585.58, $1,250.00 of which was for the injuries allegedly sustained in the latter accident. In a statement regarding the latter accident, reference was made to the injuries sustained in the former. There, plaintiff stated:
“I had injuries to my neck and left arm as a result of this [the preceding] accident. These injuries had not given me too much trouble prior to this accident.”
The award in this instance is, in our opinion, grossly excessive and should be reduced to $2,000.00 plus medical expenses incurred.
Plaintiff Roy Lowery initially claimed that as a result of the accident he was generally “shook up,” and sustained a cut on his head and an injury to one of his elbows. Dr. Nash first saw plaintiff in the emergency room of a local hospital August 15, 1965. Plaintiff at that time complained of severe pain in his neck, of headaches, and of nausea. Sedatives and muscle relaxants *96 were administered. Sedatives were again given in the doctor’s office two days later.
Plaintiff was, however, admitted to a hospital August 19, 1965, under the care and treatment of Dr. Nash, who diagnosed plaintiff’s injury as a cervical or neck strain or sprain of a moderate to severe degree. Plaintiff was released from the hospital September 4, 1965. X-rays made by the doctor and at the hospital disclosed no fractures or subluxations in the cervical area. Those subsequently made by Dr. Ray E. King, an orthopedist, September 21, 1965, were likewise negative. While making no mention of it in his own notes, Dr. Nash testified that on August 25, 1965, plaintiff complained of some pain in his back, a notation of which was made by the doctor in the hospital records. However, on eleven other occasions, from and including August 15, 1965, to November 6, 1965, plaintiff made no complaint to the doctor of back pain.
Plaintiff was referred to Dr. King September 21, 1965, for an orthopedic evaluation of his condition as well as for treatment. Dr. King’s diagnosis was in accord with that of Dr. Nash. Dr. King saw plaintiff again September 24 and October 4, 1965, when, on the latter date, plaintiff was advised to return to work.
After returning to his employment with a local gas distributing company, plaintiff was involved in another accident while removing a gas meter from its attachment to a gas line. (Though the weight of this particular meter was not shown, meters were said to vary in weight from 20-50 pounds each.) While holding the meter with one hand and removing its attachments from the gas line with the other, the meter, when completely detached, dropped two or two-and-a-half feet, plaintiff’s arm length, jerking his arm as he continued to hold on to it. Pain was immediately experienced in plaintiff’s shoulder.
Following this occurrence, plaintiff saw not only his family physician but Dr. Nash. He continued to work, however, until November 18, 1965, when he became unable to walk. He was carried from his work to the hospital.
Dr. King was again consulted November 20, 1965. Plaintiff’s chief complaint was pain in his back. A myelogram revealed plaintiff had a herniated fourth lumbar disc. Surgery was performed November 27, 1965, when the discs from the fourth and fifth lumbar spaces were removed. The disc from the latter space was found, during the course of the operation, to have degenerated, requiring its removal. Hospitalization was concluded by plaintiff’s release December 11, 1965.
From subsequent examinations, particularly by one of April 12, 1966, Dr. King expressed the opinion that, while plaintiff was able to do light work, he should do no straining, stooping, pending of his back, or lifting. As a result of the surgery, a permanent disability of 10 percent was assigned to his body as a whole.
Plaintiff, however, subsequently returned to his employment and performed only light work. His services were terminated January 13, 1967, since when, despite repeated efforts, he has not found suitable employment.
Of primary concern is the question whether, as the result of the accident of August 13, 1965, plaintiff sustained the herniation of the intervertebral disc which necessitated its removal. More precisely stated, the question is whether or not plaintiff has sustained the burden of proof imposed upon him and established that portion of his claim based upon the herniated disc. Another rule well established, and often referred to, is that speculation, conjecture, mere possibility, and even unsupported probability ■ are not sufficient to support a judgment. The proof must be gauged by these rules.
Drs. Nash and King, on their many examinations and throughout the periods of their treatments of plaintiff following *97 the accident of August 13, 1965, found no basis upon which to conclude that plaintiff suffered a herniated disc in that accident. This opinion is based on the absence of manifestations of such an injury over a period of several weeks and to the fact that the intervening accident involving the meter episode was sufficient to cause it. That a possibility exists that the ruptured disc may have resulted from the accident of August 13, 1965, must be conceded. The proof, however, does not extend beyond a mere possibility. That the hernia resulted from the meter incident was characterized as entirely probable.
The seriousness of plaintiff’s injury, with its apparently permanent and disabling effects, has given cause for the most thorough consideration and painstaking review of the evidence in this case. Our study of the record has led us to conclude, so far as plaintiff’s claim is predicated upon the herniated disc, he has not borne the burden of proof imposed upon him and established that portion of his claim to that degree of certainty required by law. We are therefore constrained to hold that the herniated disc was not sustained in the accident in which defendant’s insured was involved.
For the injuries, pain, suffering, inconvenience, and discomfort resulting from the accident of August 13, 1965, an award of $4,500.00 appears adequate. From the conclusion thus reached, it necessarily follows that defendant is not obligated for hospital and medical expenses incurred in connection with plaintiff’s herniated disc. All such expenses incurred, beginning with November 18, 1965, are deemed to have been incurred in the treatment of the latter injury or, if not entirely so incurred, they have been so confused with the expenses relative to treatment of the former injury that it is impossible to determine from the record what portion was incurred on account of the injuries for which damages are now sought.
For the reasons assigned, the judgment appealed in favor of plaintiff Fred G. Longoria is amended by reducing the principal award to the sum of $2,000.00 plus $334.00 for medical expenses, and, as to the award in favor of plaintiff Roy H. Lowery, to the sum of $4,500.00 and to the allowance, in addition thereto, of hospital and medical expenses in the sum of $557.60. The medical expenses, aggregating the sum of $891.60, are ordered paid to intervenor in partial reimbursement of such expenses paid on behalf of its employees.
As thus amended, the judgment appealed is affirmed. Plaintiffs-appellees are assessed with the costs of this appeal.
Amended and affirmed.