337 So.2d 577 (1976)
Lanell N. WINDHAM
v.
SECURITY INSURANCE COMPANY OF HARTFORD and William Virgets.
No. 7472.
Court of Appeal of Louisiana, Fourth Circuit.
August 31, 1976.
Rehearing Denied October 13, 1976.
*578 Frank J. D'Amico, New Orleans, for plaintiff-appellee.
Richards & Hoepffner, Charles E. Richards, New Orleans, for Bank of Louisiana, defendant-appellant.
Before SAMUEL, GULOTTA and MORIAL, JJ.
SAMUEL, Judge.
Plaintiff filed this suit against three named defendants, Security Insurance Company of Hartford, William Virgets and Bank of Louisiana, seeking damages of $233,963.73 for personal injuries and property damages resulting from a rear end collision on February 9, 1973 when Virgets lost control of a vehicle owned by the bank. The defendant insurance company was dismissed for lack of coverage and Virgets was dismissed voluntarily by the plaintiff, leaving the bank as the only defendant.
After trial to a jury, a verdict was returned in favor of plaintiff for $55,500, and this verdict was made the judgment of the court. The defendant-bank has appealed, and plaintiff has answered the appeal seeking an increase in the award.[1]
The record reveals Virgets was employed by the bank at the time of the accident. One of his functions was to handle, in connection with another employee, automobiles repossessed by the bank pursuant to loan foreclosures or forfeitures. In addition to handling the sale of repossessed automobiles, Virgets was entrusted with the duty of taking them to a repair shop to have repairs performed as needed in preparation for sale.
The bank admitted the negligence of Virgets in operating its automobile. The case was submitted to the jury on two special interrogatories regarding the issues of whether Virgets was in the course and scope of his employment by the bank at the time of the accident and the amount of plaintiff's recovery should the jury find he was within the course and scope of that employment. These two issues are before us on appeal. The only other issue is the bank's contention that the trial court erred in granting a jury trial.
We first consider the contention relative to jury trial. The order permitting trial by jury was appended to a supplemental and amending petition. When it came to the attention of counsel for the bank, he filed a motion to recall that order on the grounds it violated a court rule regarding placing cases on the call docket; the supplemental *579 and amending petition came after the expiration of the time within which demand for jury trial must be made under LSA-C.C.P. Art. 1732; the jury costs required by LSA-R.S. 13:3105 had never been deposited by the plaintiff; and the trial court had not issued an order setting the amount of the bond to cover the additional costs and compensation to be paid to the jury, also as required by the same statute. After a contradictory hearing thereon, the motion was dismissed.
The contention comes too late. In the interest of judicial economy and fairness, we cannot allow the appellant to abide by the judgment dismissing the motion, try the case to the jury and then, after an adverse verdict and judgment, complain it should not have been tried to a jury. If the bank wished to complain about the ruling allowing jury trial, it should have done so prior to trial either by appeal or by an application for writs.[2] Accordingly, we hold appellant has either acquiesced in that ruling or has effectively waived its right to so complain.[3]
Virgets testified his use of the automobile on the day of the accident began for the dual purpose of bringing the bank's repossessed automobile to a nearby garage for repairs and of transporting himself to a garage where his own automobile had been left. He testified the garage where he intended to leave the bank's car was closed when he arrived so he went around the corner to the garage where his own automobile was located; he planned to leave the bank's car there and take his own automobile home. However, when he arrived at the second garage, it also was closed. Thus, he was unable to leave the bank's car and could not take his own. He also testified the only alternative left to him was to drive the bank's vehicle from that spot to his home. The accident in suit occurred during that journey; he skidded into the rear of plaintiff's automobile.
Virgets further testified he called John Manale, an assistant vice president of the bank, at about 3 p.m. to request a ride to the garage where he had left his automobile. Manale suggested Virgets take a Malibu automobile repossessed by the bank to the garage for repair. The garage was located a short distance from the garage in which Virgets' automobile was parked. One of the reasons for Virgets' request for a ride was the condition of the weather, that day being one of the infrequent times there was snowfall in New Orleans. Both garages had closed early because of the inclement weather.
Manale's testimony contains a denial that he suggested Virgets take the bank's automobile to be repaired. He stated affirmatively that if Virgets had asked him for a ride to the garage where Virgets' car was located, he would have given him one.
The bank argues that even if Virgets' testimony is accepted, as it obviously was by the jury, nevertheless he was not within the course and scope of his employment while driving the bank's automobile from the garage to his home; that when Virgets reached the garage where the bank's automobile was to be repaired his employment mission was accomplished; and any subsequent driving of the vehicle was outside the course and scope of his employment and only for his own convenience as a means of transportation in the inclement weather.
We cannot agree with the bank's argument. The jurisprudence establishes that when an employee is driving his employer's vehicle at the time of an accident he is presumed to be acting in the course and scope of his employment, and his employer will be responsible for damages sustained *580 by third parties as a result of the employee's negligence; this presumption is rebuttable by the employer, but only strong and convincing evidence will be sufficient to overcome the presumption.[4]
There are no hard and fast criteria to determine whether an employee using his employer's vehicle is acting within the course and scope of his employment; basically, each case must depend upon its own facts.[5] Important considerations, however, are whether the employee was acting in the service of or about his employer's business, and whether the vehicle was being used in such a manner as to benefit his employer.[6]
In the present case, the conflicting testimony of Virgets and Manale was resolved by the jury in favor of the version given by Virgets. There is nothing in the record to show the jury was manifestly erroneous in making this decision, which must be accepted on appeal in view of the discretion afforded finders of fact in Louisiana.[7]
According to Virgets' testimony, it is clear his mission would have ended upon reaching the garage where the bank's automobile work was to be done if that garage had been open for business. Virgets then would have been under the obligation to leave the vehicle at that garage and he could have proceeded around the corner for a short distance to obtain his own automobile. However, when Virgets arrived the garage was closed and he was unable to leave the vehicle at that location. He attempted to remove his car from the other garage where it was parked, but that garage also was closed. Consequently, Virgets did not have the option of placing the bank's vehicle in either garage. Hence, insofar as is shown by the record, he appears to have been faced with the choice of either taking the automobile home or parking it unguarded on the public street where it would have been susceptible to theft or damage by vandalism. Under these circumstances the choice made by Virgets in taking the automobile to his home, where it would be safe, was in the interest of his employer, to his employer's benefit, and was well within the discretion afforded Virgets in managing the sale of repossessed automobiles for the bank.[8]
The second issue for our consideration is the propriety of the jury's award of $55,500. The evidence shows plaintiff experienced abdomen and back pain together with pain radiating down the posterior aspects of both thighs. A myelogram and disogram were performed on plaintiff, and they revealed a ruptured L5 disc on the right. A laminectomy was performed to have the ruptured disc removed and plaintiff underwent psychiatric consultation and treatment for postoperative depression. Her pain persisted after the disc was removed, and it became necessary to perform a facetectomy on her. The operating neurosurgeon described a facetectomy as a surgical procedure to relieve persistent pain *581 and back spasm on patients who do not have nerve pain. While the disc removal relieved the nerve root irritation and consequently nerve pain, the second procedure was done specifically to relieve plaintiff's remaining back pain. The facetectomy consisted of placing a series of needless into plaintiff's back adjacent to the facets of the spine. However, it is true, as the bank contends, that plaintiff's underlying medical condition had been present for a period of years prior to the accident.
The $55,500 award includes special damages, such as medical and hospital expenses and loss of wages, and the record contains no information regarding the jury's conclusions as to the amounts of those special damages. While the record contains insufficient proof as to some of those damages, particularly, at least in part, the claim for lost wages, we believe the total amount of proven special damages to be approximately $6,500, so that the total award for pain and suffering was $49,000. Under all of the facts above set forth, we cannot say this amount is either so excessive or so inadequate as to constitute an abuse of the wide discretion afforded the jury by LSA-C.C. Art. 1934(3).[9]
For the reasons assigned, the judgment appealed from is affirmed.
AFFIRMED.
NOTES
[1] Plaintiff seeks an increase to $233,000.
[2] In many instances our appellate courts have granted applications for writs from orders maintaining or denying prayers for trial by jury. See, for example, Talley v. Friedman, 255 La. 735, 232 So.2d 495; Barberito v. Green, La.App., 258 So.2d 582, reversed on other grounds, 275 So.2d 407 (La.); Scott v. Hardware Mutual Insurance, La.App., 207 So.2d 817; Hicks v. Board of Supervisors of Louisiana State U., La.App., 166 So.2d 279.
[3] For example, see Duffy v. Throwbridge, 335 So.2d 30 of the docket of the Supreme Court of Louisiana, handed down June 30, 1976.
[4] Cofield v. Burgdorf, 238 La. 297, 115 So.2d 357; Fackrell v. Gulley, La.App., 246 So.2d 368; Longoria v. Progressive Mutual Insurance Company, La.App., 204 So.2d 93; Raney v. McDaniel, La.App., 165 So.2d 593; Simms v. Lawrence Bros., La.App., 72 So.2d 538; Coon v. Monroe Scrap Material Co., La.App., 191 So. 607.
[5] Wright v. Romano, La.App., 279 So.2d 735.
[6] See Wright v. Romano, supra, footnote 5; O'Brien v. Traders and General Insurance Company, La.App., 136 So.2d 852.
[7] Canter v. Koehring Company, 283 So.2d 716 (La.App. 1973); see also Schlesinger v. Fontenot, 235 La. 47, 102 So.2d 488.
[8] Virgets testified he had taken a bank automobile home once before over night because he had an appointment to transfer the vehicle the next morning. While this solitary instance is not determinative, it nevertheless indicates another way in which a bank employee could use a bank's repossessed vehicle for the benefit of his employer and thereby be within the course and scope of his employment.
[9] See Revon v. American Guarantee & Liability Insurance Company, 296 So.2d 257 (La.App.1974).