433 So.2d 888 (1983)
Frederick SUTTON
v.
CENTRAL GULF LINES, INC.
No. 83-CA-306.
Court of Appeal of Louisiana, Fifth Circuit.
June 6, 1983.
*890 Roger J. Larue, Jr., Metairie, for plaintiff-appellee.
J. Kelly Duncan, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, for defendant-appellant.
Before CHEHARDY, CURRAULT and GRISBAUM, JJ.
CURRAULT, Judge.
This appeal originates in the Twenty-Fourth Judicial District Court, Division "J", wherein the trial court rendered judgment in favor of plaintiff, Frederick Sutton, and against defendant, Central Gulf Lines, Inc., in the full amount of Four Hundred Forty-Seven Thousand Five Hundred Fifty-One Dollars ($447,551). Defendant has now appealed that judgment to this court.
In his original petition, plaintiff alleged that on February 28, 1980, while employed as a "bluewater" seaman on the M/V Green Harbour owned by Central Gulf, he was struck by a port side mooring line which became taut when the vessel was negligently allowed to move downstream. Plaintiff sought recovery against Central Gulf, his employer, alleging various acts of negligence under the Jones Act (46 U.S.C. § 688). In addition, he sought "maintenance and cure" under the general maritime law and the Savings to Suitors Clause.
Defendant's answer generally denied the allegations of plaintiff's petition and further prayed for a jury trial depositing with the court the appropriate jury fees required by law. The trial court ordered the case to be tried by a jury upon the giving of a bond in the amount of Two Thousand Five Hundred Dollars ($2,500) on or before April 18, 1981, which order was duly and timely complied with.
In response, plaintiff amended his petition to exclude recovery under the general maritime law and the Savings to Suitors *891 Clause, thus bringing his suit exclusively under the Jones Act. Subsequent to amending, plaintiff filed a motion to strike jury demand contending that since his action was one brought under the Jones Act only he had the option for a jury trial. Plaintiff's motion was granted and the matter was tried before the court.
Judgment was rendered in favor of petitioner finding defendant negligent. The trial court found the primary cause of the accident was defendant's negligence in heaving the anchor while the mooring lines were still in the water. Central Gulf has now suspensively appealed that judgment and on appeal has asserted the following specifications of error:
I. The trial court erred in granting appellee's motion to strike jury demand.
II. The trial court erred in concluding that Sutton sustained an injury as a result of an accident on February 28, 1980.
III. The trial court erred in concluding that Central Gulf Lines, Inc. was negligent and that such negligence was a legal cause of Sutton's alleged accident.
IV. The trial court erred in concluding that Sutton was not negligent.
V. The trial court erred in awarding pre-judgment interest.
VI. The trial court was in error in utilizing a six percent discount rate in calculating loss of future wages.
VII. The trial court erred in rendering an excessively high award with respect to pain and suffering.
VIII. The trial court erred in calculating the award rendered with respect to past and future lost wages.
Appellee, Frederick Sutton, additionally asserts the following specifications of error:
I. The court erred in failing to include inflation in its determination of loss of future wages for the plaintiff.
II. The court erred in failing to award plaintiff damages for past and future medical expenses.

SCOPE OF REVIEW
At this point, a discussion of the applicable law and standard of review to be applied is appropriate. Initially, we acknowledge that while we enjoy full constitutional authority to review both the law and facts in civil cases; nevertheless, under federal law and jurisprudence, the findings of the trial judge on the merits may not be disturbed unless they are clearly erroneous. Jones Act, 46 U.S.C.A. § 688; Federal Rule of Civil Procedure, Rule 52(a) [1]; Cooper v. Keyes Offshore, Inc., 421 So.2d 385 (La. App. 1st Cir.1982); Portier v. Texaco, Inc., 426 So.2d 623 (La.App. 1st Cir.1982). The courts in Cooper, supra, and Portier, supra, both looked to the United States Supreme Court for an explanation of the "clearly erroneous" rule and in McAllister v. United States, 348 U.S. 19, 75 S.Ct. 6, 99 L.Ed. 20 (1954), found the following:
"A finding is clearly erroneous when `although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.' " 348 U.S. at 20, 75 S.Ct. at 7.
In reviewing damages awarded to injured seamen under the Jones Act, such awards will not be disturbed unless they are so large as to shock the judicial conscience or indicate bias, passion, prejudice, corruption or any other improper motive. Allen v. Seacoast Products, Inc., 623 F.2d 355 (5th Cir.1980). Further, in non-jury actions, the trial court's determination of damages is *892 reviewable only for abuse of discretion, subject to being set aside as a finding of fact under the "clearly erroneous" standard of Rule 52(a) of the Federal Rules of Civil Procedure. Smith v. Manausa, 535 F.2d 353 (6th Cir.1976). As to excessive awards, each case must be determined on its own facts and comparing damage verdicts rendered in different cases is not a satisfactory method for determining excessiveness in a particular case. Allen, 623 F.2d at 364 (Quoting Wiley v. Stensaker Schiffahrtsges, 557 F.2d 1168, 1172 (5th Cir.1977).

I.
Appellant contends the trial court erred in granting appellee's motion to strike jury demand.
Appellee's motion to strike the jury trial demand was argued May 22, 1981, then granted May 28, 1981. Appellant, Central Gulf, did not seek supervisory writs from this adverse ruling nor did they raise any objection at the time of the trial to the lack of a jury.
In giving reasons why denial of a jury trial was proper, the court in Babin v. Cole, 419 So.2d 1283 (La.App. 5th Cir.1982), stated at 1285:
"... defendants failed to raise any objection at time of trial to the lack of a jury, or to seek supervisory writs, and tried their case to the court. By so doing, they effectively waived their right to a jury."
Although there was a jury trial involved, nonetheless, we also find Windham v. Security Insurance Company of Hartford, 337 So.2d 577 (La.App. 4th Cir.1976) to be helpful and analogous. In Windham, supra, the defendant filed a motion to recall an order permitting jury trial in that (1) the order violated a court rule regarding placing cases on the call docket; that (2) the supplement and amending petition came after the expiration of the time within which demand for jury trial must be made; that (3) jury costs were never paid; and that (4) the trial court had not issued an order setting the amount of the bond. After a contradictory hearing, the motion was dismissed.
The matter proceeded to trial without further objection by the defendant. After an adverse judgment, the defendant appealed attacking the trial by jury. In dismissing defendant's appeal, the Fourth Circuit in Windham, supra, stated at 579:
The contention comes too late. In the interest of judicial economy and fairness, we cannot allow the appellant to abide by the judgment dismissing the motion, try the case to the jury and then, after an adverse verdict and judgment, complain it should not have been tried to a jury. If the bank wished to complain about the ruling allowing jury trial, it should have done so prior to trial either by appeal or by an application for writs. Accordingly, we hold appellant either acquiesced in that ruling or has effectively waived its right to so complain.
Consequently, as defendant failed to apply for supervisory writs or raise any other objection whatsoever either prior to or at the time of trial, we hold appellant has acquiesced in the ruling dismissing his jury demand and is precluded from complaining about that ruling now in this appeal.
Accordingly, the issue of whether a defendant has a right to request a jury trial in a Jones Act case brought in State court is moot and we decline to pass on it.

II.
Appellant contends the trial court erred in concluding that Sutton sustained an injury as a result of an accident on February 28, 1980.
In considering a finding of fact by the trial court, we are bound by the above stated scope of review and are committed to affirm such a finding unless we, as reviewing court, after viewing the entire evidence, have a definite and firm conviction that a mistake was made. McAllister, supra.
This assignment of error by Central Gulf essentially attacks the trial court's judgment on the credibility of the witnesses. Appellant asserts the testimony of Captain Curry and Mr. Neilson was more correct *893 while the trial court based its decision on the testimony of Mr. Tamoyosa and appellee, Mr. Sutton.
While insisting the more credible testimony is that of Mr. Neilson and Captain Curry, Central Gulf argues Mr. Sutton's testimony that he was injured on the job on February 28, 1980 is uncorroborated and self-serving. Neither Curry nor Neilson had independent recollection of the day in question and neither could recall anything unusual occurring to any crewmember on February 28, 1980. As neither had independent recollection, both of these witnesses had to rely upon the desk and medical logs. Indeed, their testimony seems to have strong support in that there is no accident report nor any notation, either medically or in the desk log, concerning Mr. Sutton's injuries. However, after closer inspection, we find these logs not to be as strong a support as appellant would have this court believe.
Besides certain discrepancies between the desk log and medical log[2], Captain Curry testified that the mate does not necessarily put the entries in the medical log until he has a chance the next day or finds time to do the paper work. Curry further testified that not all injuries are reported in the desk log. Minor injuries that do not incapacitate the seaman may not be logged or even arouse suspicions.
Sutton's testimony was bolstered by the testimony of Mr. Tamoyosa. Over the continuing objection of appellant's counsel, Mr. Tamoyosa testified that fellow employees, Mr. Hiker and Mr. McNair, witnessed the accident and both related their stories to him. Mr. Tamoyosa further testified that Mr. Sutton borrowed a hot water bottle from him for his injuries and that Mr. Sutton's action, i.e., limping, were consistent with his version of the accident.
Sutton's version was further bolstered by the testimony of Dr. Jarrott, Sutton's treating physician. He testified that the accident, as related to him by Sutton, was consistent with the nerve damage suffered by Sutton.
The finding that Sutton was involved in an accident resulting in his injuries is a finding based upon the trial court's opportunity to judge the credibility of the witnesses. In the instant case, the trial court obviously lent more credence to the testimony of Sutton and the weight of evidence supporting him. In fact, the trial court in its written reasons stated clearly that it was not impressed by Captain Curry's irate attitude and evasive testimony. In light of the fact that both logs were shown not to be entirely reliable, and as neither Curry nor Neilson had independent recollection of the day in question thus requiring them to depend on those logs, we cannot say the trial court was clearly erroneous.

III.
Appellant contends the trial court erred in concluding that Central Gulf Lines, Inc. was negligent and that such negligence was a legal cause of Sutton's alleged accident.
A trial court's findings regarding negligence are to be treated as findings of fact reviewable under the "clearly erroneous" standard. Portier, supra. The Jones Act, being remedial in nature, imposes a higher standard of care on employers which results in liability upon the showing of only "slight negligence." Allen, supra; Davis v. Hill Engineering, Inc., 549 F.2d 314 (5th Cir.1977). On the basis of the probative evidence contained in the record, we cannot say that the trial court was clearly erroneous in concluding that the employees of Central Gulf acted negligently in carrying out the unmooring operations.
The trial court concluded that the primary cause of the accident was Central Gulf's negligence in heaving the anchor while the mooring lines were still in the water. The trial court based this conclusion *894 on testimony of Captain Curry, Sutton and the log.
From the written reasons for judgment, we find the following to be most pertinent:
The court is not impressed by Captain Curry's irate attitude and evasive testimony. The court is impressed with the demeanor of Mr. Sutton, as well as the consistency in his testimony.
The court finds the testimony of Captain Curry, to the effect that it took only three minutes to get two, seventy-five foot mooring lines on deck, and is not worthy of belief. He did not state that he personally observed the lines on deck, nor did he state from his own experience that he knew this to be true. He merely stated, "The log book shows three minutes. I'll go with that," and that "this captain won't allow his anchor to be heaved. That's very poor seamanship to have lines draped in the water and trying to heave an anchor."
There is no question that only three minutes elapsed between the time the lines were in the water and the heaving of the port anchor. The log reads in pertinent part, "1504 Last line off buoys. 1507 Com. Heave Port Anchor." Sutton testified that it takes at least four minutes to take each mooring line on deck. (A total of eight minutes)
Thus, the court finds that it was impossible for plaintiff to get two port lines on deck in three minutes and that by heaving the anchors, the vessel was allowed to drift aft (testimony that there was a 3½ to 4½ knot current) causing the mooring lines to run and strike about. The court also finds that, although plaintiff was not in a position to see what caused the lines to tangle, his testimony that he felt the line hang up is sufficient evidence to justify a finding that the line was snared.
As evidence of the slightest negligence is sufficient to sustain a finding of Jones Act liability, Davis, supra, we find that the record amply supports a finding of such negligence and, accordingly, rule there was no error in the trial court's finding of Jones Act liability on the part of the appellant.

IV.
Appellant contends the trial court erred in concluding that Sutton was not negligent.
The duty of a seaman is to do the work assigned, not to find the safest method for doing that work. Spinks v. Chevron Oil Company, 507 F.2d 216 (5th Cir.1975). However, this does not mean a seaman may conduct his work with total disregard as to necessary safety precautions. Seamen do have some duty to use reasonable care, even though that duty is slight. Bobb v. Modern Products, Inc., 648 F.2d 1051 (5th Cir.1981).
The trial court concluded that Sutton in no way contributed to the accident. Our appreciation of that finding is not that Sutton was free of any negligence, but that none of his actions were in any way connected with his accident. After reviewing the record, this court is satisfied that Sutton fulfilled his slight duty to protect himself. Accordingly, we find the trial court was not "clearly erroneous" in concluding Sutton in no way contributed to his accident.

V.
Appellant contends the trial court erred in awarding pre-judgment interest.
The trial court awarded pre-judgment interest from the date of judicial demand. It is well settled law that interest under the Jones Act may only be awarded from the date of judgment. Rains v. Diamond M. Co., 396 So.2d 306 (La.App. 3d Cir.1981); Barrios v. Louisiana Construction Material Company, 465 F.2d 1157 (5th Cir.1972).
Appellee, in his brief, concedes on this point of law and agrees the trial court erred. Accordingly, this portion of the trial court's decision is amended to bear interest only from the date of the trial court's judgment.

VI.
Appellant contends the trial court was in error in utilizing a six percent discount *895 rate in calculating loss of future wages.
Appellant argues that it is well settled that the proper amount of damages in a Jones Act lawsuit brought in State court is to be determined in accordance with federal law and jurisprudence to the exclusion of State law. With this argument, appellant asserts that the trial court erred in using a discount rate of six percent because this rate offered by Dr. Waggoner, appellee's economic expert, was taken from an article published by Dr. Melville Wolfson in the Louisiana Bar Journal discussing past State law personal injury cases. Accordingly, appellant insists this court look to federal law and jurisprudence for a determination of an appropriate discount rate to be applied in calculating future lost wages.
In Davis, supra, that court explained that estimates used by experts attempting to reflect expected increases in productivity are speculative and only serve the court as projections of future rates of inflation. The court then went on to remand that case to the district court and instructed such court to recalculate its award for future earnings using a discount rate of six percent.
More recently, in Hoskie v. United States, 666 F.2d 1353 (10th Cir.1981), a discount rate of 9.5 percent was used, but was used in connection with a six percent rate of wage inflation. The court in Hoskie, supra, cited Davis, supra, but distinguished the latter by noting that that court did not allow for any rate of wage inflation.
As our district court disallowed any rate of wage inflation, we do not find that the adoption of a six percent discount rate was clearly erroneous. Accordingly, we dismiss this assignment of error.

VII.
Appellant contends the trial court erred by rendering an excessively high award with respect to pain and suffering.
As set out earlier, we emphasize that a trial court's determination of damages will not be disturbed on appeal unless such award is clearly erroneous. Smith, supra.
Sutton was seen by Dr. Jarrott while experiencing severe back pain and, as a result of the injuries he received, underwent a myelogram and surgery on two disc levels. However, Sutton continued to have back and leg problems coupled with an inability to sleep. Dr. Jarrott attributed these problems to Sutton's nerve damage.
Even Dr. Soboloff, defendant's physician, found a complete collapse of a disc space. Dr. Soboloff further stated that the back pain experienced by Sutton need not be brought on by work, but could be induced by standing and trying to bend or twist or stoop and lift moderate weights.
After a thorough review of the record and the medical evidence contained therein, considering the lumbar laminectomy and disectomy at L4-5 and L5 and the contemplated disc fusion, together with the daily pain and inconvenience associated with the collapsed disc space, we find the trial judge's award of damages to be generous but neither shocking to our conscience, nor clearly wrong as such award is amply supported by the record.

VIII.
Appellant contends the trial court erred in calculating the award rendered with respect to past and future lost wages. As to past wages, appellant argues the trial court erred in using an average of Sutton's salary for the years 1977, 1978 and 1979, in that the only evidence offered at trial with respect to plaintiff's salary was appellant's expert, Dr. Wood, and his averages were not followed by the trial court. Appellant further insists the trial court erred in considering fringe benefits in calculating past wages.
At trial, the court was offered two averages for Mr. Sutton's salary covering 1977, 1978 and 1979. Plaintiff's expert, Dr. Waggoner, proposed a figure of Forty-Eight Thousand Nine Hundred Twenty-Four Dollars ($48,924), while defendant's expert suggested Twenty-One Thousand Two Hundred Forty-Eight and 5/100 ($21,248.05). *896 One explanation for such a difference is that Dr. Waggoner included Eight Thousand Eight Hundred Ninety-Six Dollars ($8,896) worth of fringe benefits.
The trial court awarded Forty-Six Thousand Eight Hundred Forty-Eight Dollars ($46,848) for loss of past wages which is reasonably close enough to Dr. Waggoner's figure to suggest the court considered his calculations to be more credible. Accordingly, without a showing by appellant that the trial court was clearly erroneous, we will not disturb such a finding on appeal.
Appellant also contends that the trial court's calculations for lost future wages was in error and offers its own calculations as an alternative. Appellant's calculations would have Sutton receiving Seventy-Four Thousand One Hundred Seventy-Two and 8/100 Dollars ($74,172.08) instead of One Hundred Fifty Thousand Seven Hundred Three Dollars ($150,703), as provided by the trial court. Again, however, we cannot say the trial court's calculations were clearly erroneous.
It is apparent from the record that the trial court followed one set of Dr. Waggoner's proposed calculations to the penny. Dr. Waggoner testified that with a worklife expectancy of eleven years, utilizing a six percent discount rate, zero inflation, subtracting for taxes and allowing a post-injury income of minimum wage, the value would be One Hundred Fifty Thousand Seven Hundred Three Dollars ($150,703). The trial court's calculations are amply supported by the record and accordingly shall stand as we find no error on the part of the court.

APPELLEE'S ASSIGNMENT OF ERRORS

I.
Appellee contends the court erred in failing to include inflation in its determination of loss of future wages for the plaintiff.
At the time of the trial, the controlling federal jurisprudence clearly stated that inflation was not a factor to be considered by juries or triers of facts in determination of loss of future wages. Johnson v. Penrod Drilling Co., 510 F.2d 234 (5th Cir.1975). Although the U.S. Fifth Circuit Court has since reversed Johnson, supra, in Culver v. Slater Boat Co., 688 F.2d 280 (5th Cir.1982), Johnson is controlling.
Accordingly, the trial court's refusal to consider inflationary factors in the instant case was proper.

II.
Appellee contends the court erred in failing to award plaintiff damages for past and future medical expenses.
The judgment of the trial court does not distinguish between the various types of damages and instead awards plaintiff a specific sum. In written reasons for judgment, the trial judge itemizes the award into the following categories: (1) past lost wages; (2) future lost wages; and (3) past and future pain and suffering. We are at a distinct disadvantage in reviewing the award in that no mention is made of past and future medical expenses.
The record contains evidence that Sutton incurred Seven Thousand Nine Hundred Twenty-one Dollars ($7,921) past medical expenses and faces possible Seven Thousand Dollars ($7,000) future medical expenses. Thus appellee insists we amend the award of the trial court to include Fourteen Thousand Nine Hundred Twenty-one Dollars ($14,921) past and future medical expenses.
Even though the judgment is silent as to these expenses, we believe it is fair to say that the trial judge could have included them when calculating the pain and suffering portion of the award. Although pain and suffering would be the substantial part of that award, it seems reasonably clear that these two items together, pain and suffering and medical expenses, could account for the apparent generosity in awarding Two Hundred Fifty Thousand Dollars ($250,000).
Accordingly, we decline to disturb the award as we believe the pain and suffering *897 portion is sufficient to include the medical expenses.
Therefore, for the above stated reasons, the judgment of the trial court is amended to disallow prejudgment interest, otherwise the judgment as to the denial of a jury trial; the finding of Central Gulf negligent; Frederick Sutton not negligent; Forty-Six Thousand Eight Hundred Forty-eight Dollars ($46,848) for past wages; One Hundred Fifty Thousand Seven Hundred Three Dollars ($150,703) for future wages; and Two Hundred Fifty Thousand Dollars ($250,000) for pain and suffering is affirmed. Appellant is to pay all costs of this appeal.
AMENDED AND AFFIRMED AS AMENDED.
NOTES
[1] Fed.R.Civ.P. 52(a) provides, in pertinent part, as follows:

"(a) Effect. In all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specially and state separately its conclusions of law thereon, and judgment shall be entered pursuant to Rule 58; and in granting or refusing interlocutory injunctions the court shall similarly set forth the findings of fact and conclusions of law which constitute the grounds of its action. Requests for findings are not necessary for purposes of review. Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses." (Emphasis added)
[2] Captain Curry testified that accidents were reported in both logs. Yet, a Mr. Mosorski was injured on February 28, 1980, as noted in desk log, but was not reported in the medical log until the following day. Injuries to Messrs. Davis and Cinnison were noted in the medical log, but could not be found in the desk log.