CARTER, Judge.
This is an appeal from a trial court judgment in favor of Premier Bank, National Association[1] (Premier) and against defendants, Majella, Inc., Audrey Daisy Douglas, and Kordice Majella Douglas,[2] on a promissory note recognizing and maintaining a collateral mortgage affecting certain property in East Baton Rouge Parish.
FACTS
On August 29, 1984, Majella, Inc. executed a promissory note in the principal amount of $166,430.39 in favor of Premier. As security for this indebtedness, each of the individual defendants endorsed the note, executed a “continuing guaranty,” and executed a collateral mortgage, note, and pledge agreement. The collateral mortgage encumbered certain immovable property in East Baton Rouge Parish. Premier also held security interests in five (5) vehicles belonging to the defendants. Pri- or to the instant suit, the vehicles were sold, and the proceeds were applied to the defendants’ indebtedness. Premier provided release prices, approved the sales, released the security interests, and accepted the sales proceeds.
When the principal debt became delinquent, Premier filed the instant suit seeking judgment against defendants for the amount due pursuant to the promissory note and for recognition of Premier’s mortgage on the immovable property. The defendants answered, urging that each of five mortgaged vehicles was sold at private sale without appraisement, that Premier received cash proceeds from each of the sales, and that Premier applied the cash proceeds to the principal obligation, thus forfeiting any right to a deficiency judgment against the defendants. The defendants also requested a civil jury trial, which was later denied.
After a trial on the merits, the trial court rendered judgment in favor of Premier. From this judgment, defendants appeal, assigning three specifications of error:
I. The Trial Court erred in denying the defendants a civil jury trial.
II. The Trial Court erred in failing to accord defendants the presumption to which they were entitled that the private sales without appraisal of the five mortgaged vehicles did not benefit the defendants and constituted an attempt by the creditor to unlawfully circumvent the Louisiana Deficiency Judgment Act.
III. The Trial Court erred in finding that the plaintiff presented sufficient evidence at trial to rebut any presumption in favor of the defendants and to support its holding that the plaintiff did not violate the Louisiana Deficiency Judgment Act.
JURY TRIAL
The first assignment of error alleges that the trial court erred in denying defendants a civil jury trial. Defendants requested a trial by jury in their answer, but the request was subsequently denied in the pretrial order, signed on October 11, 1990. Defendants did not appeal the denial of the jury trial request prior to trial. They did not seek supervisory writs, nor did they object to the denial in the trial court. Under these circumstances, the jurisprudence has consistently held that defendants have waived their right to raise the objection. Gamble v. D.W. Jessen & Associates, 491 So.2d 483, 484-485 (La. App. 3rd Cir.), writ denied in part and granted in part on other grounds, 496 So.2d 319 (La.1986); Sutton v. Central Gulf Lines, Inc., 433 So.2d 888, 892 (La. App. 5th Cir.1983); Windham v. Security Insurance Company of Hartford, 337 So.2d 577, 579 (La.App. 4th Cir.1976), writ denied, 341 So.2d 407 (La.1977).
*966 VIOLATION OF THE DEFICIENCY JUDGMENT ACT
Defendants contend that the trial court erred in failing to accord them the presumption to which they were entitled, namely, that the private sales without appraisal of the five mortgaged vehicles did not benefit the defendants and constituted an attempt by Premier to circumvent the Louisiana Deficiency Judgment Act.
The court in University Properties Corporation v. Fidelity National Bank of Baton Rouge, 500 So.2d 888, 907 (La.App. 1st Cir.1986), writ denied, 501 So.2d 762 (La.1987), stated that the public policy for the Louisiana Deficiency Judgment Act mandates that debtors be protected from overbearing creditors and that such creditors should not be allowed to circumvent the Louisiana Deficiency Judgment Act. Accordingly, the court set forth the following presumption, to which defendants refer:
[W]henever a creditor and debtor (and/or surety) enter into a partial dation of the encumbered (mortgaged or otherwise) property of the debtor without benefit of appraisal, a presumption arises that the .agreement does not benefit (is unfavorable to) the debtor (and/or surety) and constitutes an attempt to unlawfully circumvent the LDJA [Louisiana Deficiency Judgment Act], thus precluding a deficiency judgment in favor of the creditor. However, this presumption is rebutta-ble, and the creditor bears the burden of showing he acted in good faith, the agreement was consented to by the debt- or (and/or the surety) and the agreement benefited (was favorable to) the debtor (and/or the surety). If the creditor can make such a showing, the partial dation is not in violation of the LDJA and the creditor is entitled to a deficiency judgment, if all other requirements of law have been met.
A review of the record, including the trial judge’s oral reasons, convinces us that the defendants were accorded the benefit of the presumption in the instant case.
The issue then becomes whether Premier adequately rebutted the presumption by showing (1) that the bank acted in good faith, (2) that defendants consented to the sales of the vehicles, and (3) that the sales benefited the defendants. If Premier, in fact, rebutted the presumption, it is entitled to the deficiency judgment rendered by the trial court.
As to the first element, we agree that Premier acted in good faith. The testimony of Michael Reffalt, vice-president of the Special Assets Division of Premier, established that bank employees had many telephone conversations and several meetings with defendants in an attempt to work out an acceptable plan to liquidate defendants’ assets. In oral reasons, the trial judge indicated that he was convinced that Premier was not being an overbearing creditor. Rather, “they were being lenient with the debtor in attempting to help her work out her problems with the bank, and specifically attempting to help her salvage those two vans which were the subject of sale number three.”
Regarding the second element, the trial judge determined that Premier proved that the debtors consented to the sales of the vehicles despite the conflicting testimony. Kordice Williams testified for' the defendants about the sales of the vehicles. According to her testimony, Premier sold two of the vehicles without her knowledge. She stated, however, that she initially contacted Premier and informed them of the need to sell the two vehicles.
Two Premier employees testified regarding the sales of the vehicles. Anne Kurz of the loan servicing department testified that she managed defendants’ accounts until the vehicles were all sold. She indicated that Kordice Williams called her in a panic and told her that the two vans being stored on Plank Road had to be sold. Apparently, the owner of the storage facility threatened Kordice Williams, indicating that if she did not do something about the vans, he would salvage them himself, keeping all proceeds. Pursuant to Ms. Williams’ request for help, Anne Kurz called several salvage companies to get estimates on the vans. The bank was finally able to sell the vans for two hundred dollars each. The *967 sales’ proceeds were paid directly to the bank and applied to defendants’ loan.
Michael Reffalt testified that bank personnel met several times with defendants attempting to come up with an acceptable plan for selling the vehicles. Premier ultimately provided defendants with prices, which established the sums for which Premier would release its security interest in the respective vehicles. According to Mr. Reffalt’s testimony, Kordice Williams informed Premier that the vans were going to be salvaged by the owner of the storage facility, unless she removed them. In response to this information, Anne Kurz contacted several appraisers and sent them out to the storage facility on behalf of Ms. Williams.
Mr. Reffalt stated that he had met with Anne Kurz and specifically cautioned her that the bank could in no way act as the seller of the vehicles. She was instructed, however, that she could assist the defendants in obtaining salvage prices for the vans. Mr. Reffalt testified that the prices given by the appraisers were relayed to Kordice Williams, and she instructed Premier to go through with the sales.
Based on the testimony, we cannot say that the trial judge was manifestly erroneous in finding that the debtor consented to the sales. The appellate courts accord great weight to the trial court’s assessment of credibility and accuracy of witnesses and other evidence. Fibrebond Corporation v. Aetna Casualty & Surety Corporation, 583 So.2d 848, 852 (La.App. 1st Cir.1991). The manifest error — clearly wrong standard demands great deference to the trier of fact’s findings when those findings are based on determinations regarding credibility of witnesses, for only the fact finder can be aware of variations in demeanor and tone of voice that bear so heavily on the listener’s understanding and belief in what is said. Lirette v. State Farm Insurance Company, 563 So.2d 850, 852 (La.1990).
Finally, we agree with the trial judge’s determination that the sales benefited the debtors. The proceeds of the sales were applied to the balance due on the loans thereby decreasing defendants’ indebtedness to the bank. Accordingly, the third element required to rebut the presumption set forth above was satisfied by Premier.
Based on the reasons stated above, we conclude that Premier put forth sufficient evidence to rebut the presumption stated in University Properties Corporation v. Fidelity National Bank of Baton Rouge, 500 So.2d at 907. Accordingly, we find that the private sales of the vehicles did not violate the public policy of the Louisiana Deficiency Judgment Act. The judgment of the trial court is correct.
CONCLUSION
For the above reasons, the judgment of the trial court in favor of Premier and against the defendants is affirmed. Costs of this appeal are assessed against defendants.
AFFIRMED.

. Premier Bank, National Association was formerly Louisiana National Bank.

. At the time of trial, Kordice Douglas had married and is referred to in this opinion as Kord-ice Williams.