TEEKELL, Judge Pro Tem.
This suit was brought in March of 1983 by the Plaintiff-Appellant, William A. Gamble, asserting a cause of action based upon allegations that a partnership (D.W. Jessen and Associates) between himself and D.W. Jessen, Defendant-Appellee was terminated by Gamble’s retirement and withdrawal on June 30,1981, but continued to be operated by Jessen as a sole proprietorship. In the suit entitled “Petition For Recognition Of Dissolution Of Partnership, For Partition Of Partnership Assets, For An Accounting And For Damages”, Gamble sought an inventory of the partnership assets, audit of the books and records, payment for his share of the partnership assets, payment of his share of accounts receivable (less reasonable collection expenses), his percentage of fees for work completed but unbilled, fees for work in progress but unbilled (less reasonable collection expenses), that defendant be required to post security for the payment of partnership obligations in as much as said defendant had chosen to continue the business as a sole proprietorship, that the assets of the partnership be partitioned, and for a judicial determination of the value of his interest in the partnership as of the date of his withdrawal, a money judgment against the Defendants-Appel-lees for the amount so determined, along with other relief.
There is little question that the petition filed by Gamble asserted the existence of a partnership, and requested a trial by jury. A motion to strike the jury request was filed by D.W. Jessen, and after hearing, the trial court granted the motion, from which no appeal was taken or any writ for supervisory relief pursued by Gamble. The case proceeded to trial without a jury, with the result that the district court found that no partnership existed between Gamble and Jessen, and that it was therefore unnecessary for the court to consider or resolve the remaining issues in the case.
The issues presented on appeal are as follows: (1) whether the trial court erred in denying Plaintiff-Appellant trial by jury, (2) whether the trial court applied an incorrect legal standard in its determination whether a partnership existed, and (3) whether the trial court erred in failing to determine whether the Plaintiff-Appellant was entitled to recover under the evidence adduced, even in the absence of a partnership.
NO. 1 — TRIAL BY JURY:
Article 1731 of the Louisiana Code of Civil Procedure at the time this suit was filed read as follows:
“Except as limited by Article 1732, the right of trial by jury is recognized.
The nature and amount of the principal demand shall determine whether any issue in the principal or incidental demand is triable by jury”
Article 1733 of the Louisiana Code of Civil Procedure at the time this suit was filed read in pertinent part as follows:
“A trial by jury shall not be available in;
(1) •••
(2) ...
(3) A summary, executory, probate, partition, mandamus, habeas corpus, quo warranto, injunction, concursus, workmen’s compensation, emancipation, tutorship, interdiction, curatorship, legitimacy, filiation, separation from bed and board, annulment of marriage, or divorce proceeding;
(4) ...
(5) ...
Although the plaintiff’s petition did seek some sort of monetary award, the thrust of his suit was in the nature of a partition proceeding. However, even if the *485 trial judge’s denial of a jury was incorrect (and we do not hold that to be the case), the jury issue is not reviewable at this point since no objection was made by Plaintiff-Appellant at the trial level, no appeal was taken prior to trial, nor were supervisory writs sought. Under these circumstances, Plaintiff-Appellant has clearly waived his right to raise the jury issue after a trial on the merits. See Windham v. Security Insurance Company of Hartford, 337 So.2d 577 (La.App., 4th Cir., 1976) and American Bank & Trust Co. v. T and L, 340 So.2d 636, (La.App., 2nd Cir., 1977), writs denied at 342 So.2d 1111.
It is significant to point out that in the American Bank & Trust Co. case, supra, the court further pointed out:
“On an appeal from a final judgment on the merits where the appellant asserts as the only error below the erroneous disposition of a demand for a jury trial, the error as such becomes relatively inconsequential because of the appellate court’s contitutional obligation to review both law and facts whether by jury trial or judge trial. La. Constitution 1974 Art. 5, Section 10(B).”
NO. 2 — LEGAL STANDARD IN DETERMINING PARTNERSHIP:
Article 2801 of the Louisiana Civil Code at the time this suit was filed defined partnership as follows:
“Partnership is a synallagmatic and commutative contract made between two or more persons for the mutual participation in profits which may accrue from the property, credit, skill or industry, furnished in determined proportions by the parties.”
Article 2813 of the Louisiana Civil Code at the time this suit was filed provided as follows:
“A participation in the profits of a partnership carries with it a liability to contribute between the parties to the expenses and losses. But the proportion, like that of the profits, may be regulated by the stipulation of the parties, and, where they make none, is provided for by law.”
Thus, as defined by the Civil Code, a partnership is a distinct legal entity, apart from it partners, resulting from contract or consent between two or more parties to combine their efforts and resources in prearranged proportions at mutual risk for their common profit or benefit.
Much is made by Plaintiff-Appellant of the court’s finding that “... the basis of this opinion is on the grounds that there was no mutual consent to form a partnership by and between the parties ...”
Plaintiff-Appellant suggest that the court felt obliged to find a specific intent on the part of the parties to form a partnership, under the standards implicit in the old civil code articles and jurisprudence thereunder, and ignored the recent provisions of Legislative Act 150 of 1980 and Act 795 of 1981, which, counsel contends, lessen any notions of specific intent, and provide that a partnership may be found to exist whenever the parties (regardless of their specific intent with respect to the formation of a partnership) are shown to have intended and agreed to enter into a contract which in its terms and provisions embodies the essential elements of a partnership contract.
The factual context of the case sub judi-ce goes back many years when William A. Gamble and D.W. Jessen were college classmates, and graduated from the L.S.U. School of Engineering in 1940, with degrees in Civil Engineering. After World War II, Gamble returned to L.S.U. to study mechanical engineering, and served as an instructor in civil engineering. Meanwhile, Jessen had established a practice of civil engineering in Lake Charles, Louisiana. On June 22, 1949, following a brief period in private industry, Gamble joined Jessen in Jessen’s already established practice of civil engineering in Lake Charles. This professional relationship continued until Gamble’s departure on June 30, 1981.
Gamble initially was paid a flat salary. In two or three years an arrangement developed whereby Gamble would receive for *486 ty per cent (40%) of the net income of the practice. This agreement was never reduced to writing. Gamble perceives this arrangement as a partnership agreement, whereas Jessen contends that there was never any discussion between them regarding a partnership, and that he simply converted Gamble’s salary to a percentage of net profit out of a desire to give an incentive to Gamble to work harder. Neither party contends that the matter of a partnership was ever discussed thereafter.
Whatever the discussions may have been or the intention of either party to form or not to form a partnership, the factual setup of their practice together is not seriously disputed. From the beginning Mr. Jes-sen had the final say in the hiring and firing of all employees, had exclusive control of what work would or would not be done, what equipment would be purchased and sold, signed all the contracts, along with all checks. There is no dispute that Mr. Jessen owned all of the equipment of the business. Throughout this time there were other engineers associated with the firm who were paid a salary at one time or other calculated on a percentage of net profit.
The bank accounts were under the name of “D.W. Jessen, CE”, and only Jessen could sign checks. Automobile liability insurance policies issued to the firm stated that the firm was individually owned, as well as did general liability insurance policies, umbrella general liability insurance coverages, and workmen’s compensation insurance policies. All of these indicate that the business was individually owned. Vehicle titles were usually in the name of “D.W. Jessen” and occassionally “D.W. Jessen and Associates”. All of the financial statements throughout the years show Jessen to be the only capital owner, with Gamble as an associate and his percentage salary as “amount due Gamble” and a liability from Jessen to Gamble. The applications for professional liability insurance state D.W. Jessen to be the owner of the business and that the business is privately owned. Applications for engineering license lists Gamble as “full-time employee” with Jessen listed as “owner”, and the type of firm being “private-owner”. Various resumes of the business show Jessen as the owner, with Gamble as a principal, or associate, or chief engineer, and show the business being individually owned, and Jessen signs as “owner”. Letters and correspondence do not include Gamble as a partner. Numerous contracts and certifications of ownership were introduced into evidence, none referring to the business as a partnership; all were signed by Jessen as owner.
Only two documents out of literally thousands refer to a “partnership”. Both of these documents were prepared by third parties, one being a letter by the attorney for the Port of Lake Charles, referring to Jessen, the engineer for the port, as the “senior partner” in the firm of D.W. Jessen and Associates. The evidence indicates that both documents were prepared by others with no particular focus on the reference to the firm as a “partnership”, and on one of the documents Jessen signed as owner.
Other engineers who worked with the firm through the years testified that they also received a percentage of net profit as salary, and never considered themselves as a partner, or that any partnership existed. Significantly, Mr. Gamble testified that, although supposedly a forty per cent (40%) partner, he was not aware that others shared in the profits.
The evidence is clear that Mr. Gamble never assumed or shared any of the risks and obligations of the business. When money was borrowed to keep the business running, it was Mr. Jessen who personally made the loans.
Moreover, income tax records indicate that Jessen withheld from Gamble’s account, and paid Gamble’s quarterly estimates directly to the Internal Revenue Service. Although the business did file a “U.S. Partnership Return of Income”, Form 1065, the firm’s accountant testified that he made the decision to file this type of return, principally because it was impractical to close out the books at the year *487 end and determine Mr. Gamble’s salary on a percentage basis within the time allowed by law to issue W-2 forms or 1099 forms. The accountant also indicated that he chose this form because the form is used by many types of business other than partnerships. Even so, Mr. Gamble never received any investment tax credits for assets purchased for the business, the tax returns showing Jessen to be the only one with any equity or ownership in the business. Additionally, the financial statements prepared by the firm’s accountants show Jessen as the only person with any capital ownership.
In Collum v. Brunning, 49 La.Ann. 1257, 22 So. 744, 747, The Court said:
“... Partnership is a special contract, dependent for its creation upon the consent of the parties (Rev.Civ.Code, art. 2805) that that particular relation should be established between them. The mere fact that two persons may both be interested pecuniarily in the same business venture, and that each gave to it equally his time and attention, by no manner of means carries with it, as a matter of law, the conclusion that they stand towards each other as partners. Consent shown by one person, who has furnished the capital by which certain operations are carried on, that another, who has employed his time, his skill, and his services for their success, should receive one-half of the profits to be derived from the same, is perfectly consistent with the fact that the latter person stands towards the former as a mere employee. Contracts of that character are formed every day, the extent of the participation . in the profits varying in the different cases.” See Franklin Printing Company vs. Scott Fence of New Orleans, Inc., 392 So.2d 170 (La.App., 4th Cir., 1981), wherein Collum vs. Brunning was quoted as above.
In summary, the evidence is preponderant that throughout the years Jessen was known and held himself out to be the sole owner of the business, took all the risks, made all of the major managerial decisions, and never acted in any manner so as to indicate any partnership relation with any of his employees. Mr. Gamble has the burden of proof to establish a partnership. The evidence indicates that he was not able to do this, and in fact, shows that no partnership ever existed.
NO. 3 — IS ANY MONEY OWNED TO PLAINTIFF-APPELLANT:
Plaintiff-Appellant contends that inasmuch as his petition did reflect a demand for some sort of monetary award, that if the evidence showed that his “salary” (however derived) was incorrectly calculated to his disadvantage, that he should be awarded a monetary sum to make up for any shortage. In this connection it is pointed out that (at Mr. Jessen’s direction) the firm’s accountant deducted annual depreciation on the equipment (along with all other expenses of the firm) from the gross income, in order to arrive at a net profit. Mr.- Gamble’s forty per cent (40%) of such profit was then calculated, and then forty per cent (40%) of the depreciation figure was deducted from Mr. Gamble’s forty per cent (40%), in order to arrive at the actual salary figure to be paid to Gamble.
Although the trial judge permitted evidence on this very point (over the objection of defendant), he did not address or resolve this issue in view of his finding that no partnership ever existed. Since the timely objection by the defendant would prevent an enlargement of the pleadings by such evidence, the trial judge evidently concluded that plaintiff’s petition did not contain a sufficiently articulated demand for unpaid wages.
While there is a tendency to drift toward notice pleadings in Louisiana, our code of civil procedure still requires fact pleading. The trial judge’s discretion here is clearly within reason, and should not be reversed on appeal.
For these reasons, the judgment of the district court in favor of the Defendant-Ap-pellee, is affirmed, at the Appellant’s cost.
AFFIRMED.