419 So.2d 1283 (1982)
Mr. and Mrs. Brian BABIN, Mr. and Mrs. Timothy Letter, Kathy Morel, Mr. and Mrs. Allen Deffner, Jr., Mr. and Mrs. Paul Vitrano, Mr. and Mrs. James Traylor, Mr. and Mrs. Benjamin Sale, Mrs. Patricia Labiche and Mr. and Mrs. John Eason
v.
Mr. and Mrs. Harry T. COLE, Jr.
No. 5-68.
Court of Appeal of Louisiana, Fifth Circuit.
August 30, 1982.
Rehearing Denied October 18, 1982.
*1285 Jamie F. Veverica, Gretna, for plaintiffs-appellees.
John David Cassanova, Metairie, for defendants-appellants.
Before CHEHARDY, KLIEBERT and CURRAULT, JJ.
CHEHARDY, Judge.
In this suit to enforce subdivision building restrictions, Mr. and Mrs. Brian Babin and others, plaintiffs, were granted an injunction against Mr. and Mrs. Harry Cole, defendants. The injunction required the Coles to remove the fences on their lot. Defendants have appealed.
Mr. and Mrs. Cole and Mr. and Mrs. John Eason were sole stockholders and directors of Idlewood West, Inc., a corporation created to develop a tract of land they owned in Jefferson Parish. In July 1974 the tract was subdivided with approval of the necessary parish governing authority and the subdivision thus created was named Idlewood West Subdivision. The corporation imposed restrictive covenants on the subdivision by act passed on November 13, 1974, duly filed in the parish conveyance office. The act was signed by John A. Eason as secretary of Idlewood West, Inc., with a corporate resolution attached authorizing Eason to execute and file restrictive covenants on behalf of the corporation.
The subdivision thereafter was developed and lots sold. The Coles, who lived in Hyde Park Subdivision adjacent to Idlewood West, took ownership of Lot 9 in Idlewood West. Lot 9 has a common rear boundary line with the Coles' Hyde Park lot.
The Idlewood West building restrictions provide, in pertinent part, as follows:
"* * * [N]o lot ... may be purchased or used as a back yard for any lot nor [sic] located within Idlewood West Subdivision." Restrictive Covenants by Idlewood West, Inc., Par. 2.
"There shall be no front yard nor side yard fence erected between the front building line and the front property line. Side yard fences, when erected between the rear property line and rear building line and rear yard fences shall be of neat and substantial construction and shall comply with the applicable Parish Ordinances." Id., Par. 16.
Some time after taking possession of Lot 9 of Idlewood West, the Coles enclosed it with a wooden fence and removed the existing fence across the rear of their Hyde Park lot. In effect, this made Lot 9 of Idlewood West and their Hyde Park lot one parcel. Their neighbors in Idlewood West thereupon filed suit against them, alleging the Coles had violated Paragraph 2 of the Restrictive Covenants by using Lot 9 as a back yard for their Hyde Park property.
The trial judge, citing Paragraph 16 of the restrictions, ordered the Coles to remove the side fences from Lot 9, and either to remove the fence fronting on Tiffany Drive or to reposition it on the rear property line.
The Coles have appealed, raising four assignments of error:
1. They were denied their right to trial by jury;
2. They failed to receive adequate notice of trial;
3. The restrictive covenants were not validly imposed; and
4. The portions of the building restrictions applied by the trial judge were vague and ambiguous and should not have been enforced.
We find no merit to defendants' contention they were denied their right to a jury trial. First, defendants failed to file the jury bond required by LSA-R.S. 13:3050, which flatly forbids a jury order in civil cases unless the bond is given. Cf. Latino v. Rush, 300 So.2d 659 (La.App. 4th Cir. 1974). Second, defendants failed to raise any objection at time of trial to the lack of a jury, or to seek supervisory writs, and tried their case to the court. By so doing, they effectively waived their right to a jury. Windham v. Security Ins. Co. of Hartford, 337 So.2d 577 (La.App. 4th Cir. 1976). Finally, all claims for money damages, in both the original petition and the *1286 reconventional demand, were dismissed before trial, and only the request for injunction remained. Because LSA-C.C.P. art. 1733 provides that trial by jury shall not be available in injunction proceedings, jury trial would have been improper.
Similarly, defendants contend the trial court failed to provide them with adequate notice of trial. They allege their only notice of trial was a telephone call from the judge's law clerk received on January 28, 1980, five days before the trial date of February 2, 1981. They allege their motion for a continuance was "summarily refused" by the trial judge and that they were forced to go to trial on February 2.
A review of the record discloses an order signed by the judge on October 15, 1980, in which a hearing on plaintiffs' request for a permanent injunction was set for February 2, 1981. In the margin of that pleading is a handwritten notation, "Attorney knows of date." Also in the record is the motion for continuance mentioned by defendants in their brief. Contrary to their assertion, the trial judge in fact granted their motion, continuing the trial from February 2, 1981 to February 9, 1981. The order continuing the trial also contains a handwritten notation, initialed by the judge, "no further notices." A minute entry follows which states, "Crt. cont. to Feb. 9, 1981, Monday." "No further notices." The minute entry shows both counsel as being present. Finally, both the minute entry of the trial and the trial transcript itself reveal the date of trial was February 9, 1981. The record thus establishes the defendants' motion was granted, and a one-week continuance given, with notice to them.
Besides this, the record shows that suit for the injunction was filed in October 1977; various exceptions, motions and other pleadings were filed in 1978 and 1979, with answer filed by the defendants in May 1980. A pretrial conference was held on March 6, 1980; according to the pretrial conference record, both counsel were present, but no trial date was then assigned, the notation being, "P/trial continued w/out date." More pleadings followed, with a motion and order setting the case for trial the week of October 20, 1980. Another pretrial conference was held on September 26, 1980.
Defendants fail to show how a later trial setting would have helped their case in any way. As set forth above, the suit had been in litigation for approximately three and a half years by the time it was tried, had been set for trial once already, and there had been two pretrial conferences. We cannot conclude the trial judge abused his discretion in continuing the trial only one week. See Reggio v. Louisiana Gas Service Company, 333 So.2d 395 (La.App. 4th Cir. 1976), writs denied, 337 So.2d 187 and 337 So.2d 526.
"The law requires that adequate notice of a trial be given to all parties, but it does not require that any particular type or kind of notice be given. LSA-CCP art. 1571 (See comment A under that article). A written notice of the date of trial is not required, unless a written request therefor is filed in the record or is submitted by registered mail. LSA-CCP art. 1572. No such request was made in this case." Prejean v. Ortego, 262 So.2d 402 (La.App. 3d Cir. 1972).
Further, defendants neither objected on the record to the resetting of the trial for February 9, nor did they seek writs to delay the trial. Accordingly, they failed to preserve their right to appeal this issue. Cf. Alford v. Glenn, 185 So. 720 (La.App. 2d Cir. 1939).
The defendants next challenge the validity of the restrictive covenants, on the basis the act establishing them was an ultra vires action by John Eason, beyond his powers as corporate secretary and without proper authorization from the board of directors (consisting of Harry Cole as president, John Eason as secretary, and Mrs. Cole and Mrs. Eason as the other two officers).
LSA-R.S. 12:42 provides:
"A. No act of a corporation, and no conveyance or transfer of movable or immovable property to or by a corporation, shall be invalid by reason of the fact that *1287 the corporation was without capacity or power to perform such act or to make or receive such conveyance or transfer; but such lack of capacity or power may be asserted:
(1) In an action by a shareholder against the corporation * * *;
(2) In an action in damages by the corporation or by its ... legal representative, or by its shareholders in a derivative or representative suit, against the incumbent or former officers or directors of the corporation;
(3) In an action by the state to dissolve the corporation, to enjoin the corporation from the transaction of unauthorized business, or to revoke a certificate of authority of a foreign corporation. * *"
Thus, the Coles may not raise the ultra vires defense against the plaintiffs in this action.
Also, in DeSoto Corporation v. Roberts Lumber & Grain Co., 174 La. 620, 141 So. 78 (1932), the court held innocent third parties were entitled to rely upon the recital in a resolution annexed to a corporation's deed, to the effect that the resolution was unanimously passed by all directors. The corporate act passed pursuant to such a resolution was held valid upon its face. This reasoning applies to the case before us.
The defendants also argue the restrictions are invalid because they were not imposed in pursuance of a general plan. This argument must fall, for it is clear from the evidence that the duly recorded Restrictive Covenants themselves, imposed by the developers prior to sale of any of the lots, read in conjunction with the plat of the subdivision made a part of the act establishing the restrictions, constituted the general plan required by LSA-C.C. art. 775. Cf. Richard v. Broussard, 378 So.2d 959, at 966 (La.App. 3d Cir. 1979).
Lastly, the defendants contend the trial judge misinterpreted and misapplied the building restrictions, which the defendants aver are vague and ambiguous.
With respect to Paragraph 16 of the restrictions, we conclude the limitations on fences are indeed ambiguous. That restriction, quoted above, prohibits front yard and side yard fences between the front building line and the front property line. We find the term building line ambiguous. It is neither defined in the restrictions, nor used elsewhere in the document. Reading it within the context of both Paragraph 16 and the restrictions as a whole, and bearing in mind the civil law principles of interpretation of agreements we cannot determine whether building line is intended to refer to an area created by actual construction of a building upon the lot, or to the buildable area remaining after compliance with the parish ordinances setting yard requirements.
LSA-C.C. art. 783 provides, "Doubt as to the existence, validity, or extent of building restrictions is resolved in favor of the unrestricted use of the immovable." We find Paragraph 16 of the Idlewood West Subdivision restrictions to be too vague and ambiguous to be enforceable. See Lake Forest, Inc. v. Drury, 352 So.2d 305 (La.App. 4th Cir. 1977), writs denied, 354 So.2d 199 (La.).
We conclude, on the other hand, that the disputed section of Paragraph 2 of the restrictions is enforceable. The pertinent portion of that paragraph provides that "no lot fronting on Tiffany Drive or Tiffany Drive South may be purchased or used as a back yard for any lot nor [sic] located within Idlewood West Subdivision." The "nor" clearly is a typographical error, and was intended to be "not"; the sentence makes no sense otherwise. Accordingly, using Civil Code principles of interpretation of agreements, LSA-C.C. art. 1945 et seq., in particular art. 1951, we interpret it to mean "not".
Since the Coles' residence lot is indisputably not located within Idlewood West, the question becomes whether fencing of their Idlewood West lot which abuts the rear property line of their residence lot constitutes use of the Idlewood lot as a back yard. We conclude it does.
*1288 Common sense, as well as reference to dictionaries, dictates that a back yard is the yard at the rear of a house or building. Webster's New International Dictionary (2d ed. 1938); American Heritage Dictionary (William Morris, ed., 1973); Webster's Third New International Dictionary (1971). The defendants' construction of a fence around Lot 9 of Idlewood West Subdivision, conjoining it to the back yard of their Hyde Park property, clearly constitutes use of the Idlewood West lot as a back yard. As such, it is forbidden by the building restrictions.
Removal of the fence around Lot 9, as ordered by the trial judge (i.e., removing the side fences completely, and either removing the front fence or else moving it to the rear lot line) would remove the proscribed usage and would place the defendants in compliance with the building restrictions. For this reason, we conclude the remedy ordered by the trial judge is appropriate.
For the foregoing reasons, the judgment of the district court is affirmed.
AFFIRMED.