FORET, Judge.
Plaintiff-appellee, John K. Damall, Jr., through his duly appointed curator, brought this action against the defendants, J.K. Damall, Inc. and John B. Levy, seeking a judgment nullifying the alleged transfer on January 7, 1980 of all of Damall’s property, both immovable and movable.[1]
Damall died subsequent to the filing of the suit and his succession representatives proceeded to trial. The defendants were not present or represented at trial. The trial judge, without written reasons, granted judgment in favor of the Succession of J.K. Damall, Jr. decreeing the sale of January 7, 1980 to be null, void, and without effect for lack of consent on the part of Damall.
Appellants, J.K. Damall, Inc. and John Levy, appealed the judgment of the trial court, urging nine assignments of error.
FACTS
On January 7, 1980, certain documents were allegedly executed by the parties to this action. Among these documents was included an “act of sale” between Damall and J.K. Damall, Inc., which purported to exchange properties described in “exhibit X” to J.K. Damall, Inc. in exchange for 225 shares of common stock of the corporation. Exhibit X includes a lengthy description of numerous immovable and movable properties, including automobiles, household furnishings, jewelry, and clothing. Exhibit X is not paraphed or otherwise identified with the “act of sale.” The sale was not recorded in the conveyance records of the various parishes involved until the 23rd of April, 1981, one week after Damall’s tragic accident.
Due to the absence of defendants at trial and due to the death of Mr. Damall, no testimony or evidence was presented at trial regarding the factual circumstances surrounding the execution of this “act of sale.”
On this same day, January 7, 1980, the Articles of Incorporation of J.K. Damall, Inc., among other corporate instruments, were allegedly executed. Soon thereafter, on February 27, 1980, the corporate minutes of J.K. Damall, Inc., signed by a certain Anatole J. Plaisance, reflect that Mr. Damall transferred a majority ownership of J.K. Damall, Inc. stock to the defendant, John Levy, together with broad corporate authority, including the authority to sell corporate property and to incur obligations on behalf of the corporation. Plaisance did not testify at trial. The record does not reflect that Mr. Damall was actually ever issued his stock, either as a majority or minority stockholder, but the record does include the J.K. Damall, Inc. stock issued to Levy.
This newly formed corporation was completely inactive until after April 16, 1981, when Mr. Damall sustained a severe bodily injury in a fall which resulted in his civil interdiction. Subsequently, the corporation began extensive activity with Mr. Levy at its helm. On May 1, 1984, J.K. Damall, Inc. filed for bankruptcy in the United States District Court for the Eastern District of Louisiana. Plaintiff was granted relief from the automatic stay on July 6, 1984, for purposes of prosecuting this litigation.
For reasons set forth in the discussion of assignment of error No. 4, infra, we affirm the trial court in finding that Mr. Damall at no time evidenced an intent to transfer title or control of his property.
ASSIGNMENT OF ERROR NO. 1
By this assignment of error, appellants contend that the appointment of the Honorable Lewis S. Doherty, III, Judge ad hoc, by the Supreme Court of Louisiana is void ab initio and is reversible error.
*1320 We have no authority to review an Order of the Louisiana Supreme Court and, as such, find this assignment without merit. We do note that a Motion to Recuse was filed by appellants. Mr. Levy was present at the hearing of this motion on February 10, 1984. The minute entry of this date reflects that Levy concurred in the following order of the trial court:
“WHEN, AFTER REVIEWING THE PLEADINGS, HAVING CHAMBER CONFERENCES WITH BOTH COUNSEL AND HEARING ARGUMENTS OF COUNSEL, AND WITH THE JOINT CONCURRENCE OF COUNSEL, IT IS ORDERED BY THE COURT THAT THE ENTIRE 16TH JUDICIAL DISTRICT BENCH, WITH THE EXCEPTION OF JUDGE EDWARD A. DELA-HOUSSAYE, WHO HAS RECUSED HIMSELF ALREADY BY MINUTE ENTRY DATED DEC. 15, 1983, BE AND THEY ARE HEREBY RECUSED AND THAT ALL INSTANTER SUBPEONA’S ORDERED AND ISSUED TODAY IN THIS CASE BE RECALLED.
IT IS ORDERED THAT THE CLERK OF COURT OF IBERIA PARISH SHALL FORWARD TO THE SUPREME COURT OF LOUISIANA A CERTIFIED COPY OF THIS MINUTE ENTRY REQUESTING SAID COURT TO APPOINT A SPECIAL JUDGE TO TRY THIS CASE.” (emphasis added)
ASSIGNMENT OF ERROR NO. 2
By this assignment of error, appellants contend that the order allowing modification of the automatic stay order granted by the United States District Court for the Eastern District of Louisiana, dated July 6, 1984, did not allow judgment to be taken against J.K. Damall, Inc.
The order of the United States Bankruptcy Court dated July 6, 1984 states, in pertinent part:
“IT IS ORDERED that the automatic stay be modified to allow mover, John K. Damall, to continue in the prosecution of his suit against debtor [J.K. Damall, Inc.] in the case entitled ‘John K. Damall versus J.K. Damall, Inc. and John B. Levy’ in the Sixteenth Judicial District Court, Parish of Iberia, Louisiana, under Docket No. 51022.”
We will not attempt to second guess the United States District Judge’s intent in issuing this order. Instead, we rely on the “plain meaning” of the words “prosecute” and “prosecution” set forth in Black’s Law Dictionary 1099 (5th Ed.1979), which states, in pertinent part:
“PROSECUTE. To follow up; to carry on an action or other judicial proceeding; .... To ‘prosecute’ an action is not merely to commence it, but includes following it to an ultimate conclusion. See also Prosecution.
“PROSECUTION.
[[Image here]]
The term is also used respecting civil litigation, and includes every step in action, from its commencement to its final determination.”
See also, The Brazil, 134 F.2d 929 (7th Cir.1943).
The clear and plain meaning of the word “prosecution” includes litigating a judicial proceeding to its ultimate conclusion, i.e., to judgment. We see no error in this interpretation of the order allowing modification of the stay order.
Also within this assignment of error, appellants contend that the judgment of June 2, 1986, appealed from herein has not been submitted to the United States Bankruptcy Court, Eastern District of Louisiana, for approval. Appellants cite no authority, and we know of no authority wherein a valid judgment of a state court must be submitted to a federal court for approval. Therefore, we find this assignment of error without merit.
ASSIGNMENT OF ERROR NO. 3
By this assignment of error, appellants contend that notice of trial was not served on J.K. Damall, Inc. or John Levy. Additionally, within this assignment of error, J.K. Damall, Inc. and John Levy contend that the trial court failed to continue the trial of June 2,1986, due to the absence of appellants and their attorney.
*1321 It should be noted that neither appellant contends that they were not aware of the trial date, but instead, merely that notice of trial was not served.
C.C.P. art. 1572 states the law regarding the requirement of written notice of trial, as follows:
“The clerk shall give written notice of the date of the trial whenever a written request therefor is filed in the record or is made by registered mail by a party or counsel of record. This notice shall be mailed by the clerk, by certified mail, properly stamped and addressed, at least ten days before the date fixed for the trial. The provisions of this article may be waived by all counsel of record at a pre-trial conference.”
The record in this action does not contain a written request for notice, or evidence that a request for written notice of trial was filed. Therefore, appellants are not entitled to written notice of the date of trial.
When no written request for notice of date of trial has been filed, the issue becomes whether or not adequate notice of trial has been given for purposes of procedural due process. In Prejean v. Ortego, 262 So.2d 402, 403 (La.App. 3 Cir.1972), we stated:
“The law requires that adequate notice of a trial be given to all parties, but it does not require that any particular type or kind of notice be given. LSA-CCP art. 1571 (See comment A under that article). A written notice of the date of trial is not required, unless a written request therefor is filed in the record or is submitted, by registered mail. LSA-CCP art. 1572.”
See also, Babin v. Cole, 419 So.2d 1283, 1287 (La.App. 5 Cir.1982), writ denied, 423 So.2d 1181 (La.1982).
On June 2, 1986, the trial judge, at the trial on the merits, stated that Levy was notified of all of the court proceedings and of this trial date. In an abundance of caution, the trial judge called Williamson, attorney for Federal Savings & Loan Insurance Corp. (FSLIC), and Riley, counsel for plaintiff, to testify as to the fact that they had both spoken with Levy and Levy had confirmed the fact that he was aware of the trial date in this action and did not intend to appear. As there was no reason to doubt the veracity of these two witnesses, we do not find that the trial judge erred in holding that Levy had actual knowledge of the date of trial.
Within this assignment, appellants contend that the trial court erred in failing to move sua sponte for a continuance of the trial due to the absence of the defendants.
In reviewing the grant or denial of a motion for continuance, we seek to find evidence that the trial court abused its discretion in denying or granting the continuance. In the instant case, no motion for continuance was filed, and we know of no authority which allows an appellate review of a trial court’s failure to exercise its discretion (other than an abuse of that discretion).
Appellants state, by brief, that, “Appellant and attorney for Appellants was in Federal custody beginning April 25, 1986.” [2] C.C.P. art. 197 B, regarding the testimony of inmates, states as follows:
“B. When in any judicial proceeding the testimony of an inmate is required by law to be given in open court or an inmate is a party to a judicial proceeding under circumstances giving him the legal right to be present in open court at any stage of the proceeding, the trial judge, in his discretion, may order that the court be convened and the testimony of the inmate be taken, or the proceedings conducted, at the institution wherein the inmate is confined.”
*1322 As clearly set forth in the above statute, the authority to implement a judicial proceeding at an institution where an inmate is confined is solely left to the discretion of the trial judge. Therefore, we find this assignment of error is without merit.
ASSIGNMENT OF ERROR NO. 5 *
By this assignment of error, appellants contend that the compromise entered into between the appellee and third party intervenors is void ab initio because appellants were not a party to the compromise. Within this contention, appellants argue that the compromise agreement deprived them of due process insofar as it adjudicated property rights of the appellants “without a hearing or an opportunity to present Appellants’ case.”
La.C.C. art. 3077 states, regarding transactions or compromises:
“A transaction made by one of the interested parties is not binding for the others, and cannot be opposed by them.”
Transaction or compromise between appel-lee and third party intervenors cannot be opposed by appellants, interested parties not directly bound by that compromise. A compromise cannot be collaterally attacked. See, Audubon Ins. Co. v. Farr, 453 So.2d 232 (La.1984). As such, we find this assignment of error without merit.
ASSIGNMENTS OF ERROR NOS. 7 & 8
By assignment of error No. 7, appellants contend that the order of February 4, 1986 is void ab initio. This order fixed this matter for trial; set a time and place for a pre-trial conference; set pending exceptions for hearing, and allowed parties not present at the January 31, 1986 status conference ten days within which to indicate any conflicts with the above fixings. Additionally, the court voiced its concern that Levy, although counsel of record, would likely be a witness at trial. As a result, Levy was ordered to furnish the court with notice as to who would be acting as his counsel at trial. Appellants contend that they had no notice of the status conference; did not attend the status conference of January 31, 1986; and were not served with the February 4,1986 order. Additionally, appellants contend that the order is improper in that it was signed in Baton Rouge rather than in open court in Iberia Parish.
By assignment of error No. 8, appellants contend that the pre-trial “order” filed by all counsel of record, excluding attorney for appellants, is void ab initio because it was not signed by appellants or their attorney; is undated; and was not filed into the record until June 2, 1986.
As shown in our discussion of assignment of error # 3, Levy personally, and as attorney for J.K. Damall, Inc., was fully aware of the date of the trial on the merits; he chose not to appear at trial. Therefore, regardless of whether or not he received notice of the pre-trial conference or of the pre-trial order, we fail to see how he was prejudiced, and he does not state in this assignment of error just how he was prejudiced.
ASSIGNMENT OF ERRORS NOS. 4 and 6
Appellants contend, by assignment of error #4, that the evidence presented by appellee at trial did not present a prima facie case as required by La.C.C.P. art. 1702.
First, we note that appellants filed an answer and made numerous appearances in this action. Therefore, the judgment rendered June 2, 1986, the subject of this appeal, is not a default judgment, and La. C.C.P. art. 1702 does not apply. See, La. C.C.P. art. 1843.
By assignment of error # 6, appellants contend that the judgment rendered June 2, 1986 should be reversed because the relief rendered went beyond the scope of the prayer for relief in the petition, contrary to La. C.C.P. art. 1703. Art. 1703 pertains to default judgments and is not applicable to this case. The trial court may
*1323 award any relief to which the parties are entitled. See, La. C.C.P. art. 1841.
The trial court, after hearing the testimony and examining the evidence, held that the alleged sale of Mr. Damall’s property on January 7, 1980 to J.K. Damall, Inc. was null, void, and without effect for lack of consent on the part of the vendor, J.K. Damall, Jr. There is no evidence that this determination is clearly wrong and thus, we affirm the judgment of the trial court.
The evidence presented at trial overwhelmingly supports plaintiff-appellant’s position that Mr. Damall had no intent to transfer his property during the January 7, 1980 transactions. Testimony elicited from Darnall’s bank, sugar cane business associates, realtors and land men, in addition to his attorney and CPA, strongly supports the fact that from January 7,1980, the date of the alleged sale, until April of 1981, when Damall became incapacitated, Dar-nall managed his property in an individual capacity and showed absolutely no indication that he had relinquished ownership and/or control of his property to a corporation.
A representative of Iberia National Bank appeared at trial and Mr. Damall’s records were introduced. This evidence established that the bank account allegedly transferred to the corporation by the January 7, 1980 act of sale was never transferred and was managed by Mr. Damall until the time of his injury in April of 1981. Associates in the sugar cane business testified and evidence was introduced establishing that, from January, 1980 through April of 1981, all payments from Damall’s sugar cane operations were paid to him individually. A neighbor and business associate of Dar-nall testified that, until his fall in April of 1981, Mr. Damall handled his business personally and revealed no indication that his land was allegedly owned by a corporation.
Two land men and a realtor also testified that, during the period from April of 1979 through April of 1981, Mr. Damall was involved, individually, in negotiating on a proposed sale of his property together with the lease of certain oil, gas, and mineral prospects. Notably, both oil operators/land men testified that they searched the property records together as to Mr. Darnall’s property, the subject of the oil prospect, in approximately April of 1981 and found nothing recorded which would suggest that the property involved belonged to a corporation.
Probably most noteworthy is the testimony of Mr. Armentor, Damall’s attorney, who testified that, upon being informed that Damall had signed corporate papers, searched the official records at the Iberia Parish clerk’s office and found nothing recorded regarding the corporation or any sale from Damall to the corporation. This title check took place in September of 1980, approximately eight months after the alleged incorporation and sale. A corroborating letter evidencing the attorney’s failure to find any evidence of the corporation and/or a sale, was filed into evidence.
Darnall’s attorney and CPA both testified that Damall owed estate taxes to the Internal Revenue Service as a result of his wife’s death in May of 1979, until April of 1981, when the Internal Revenue Service account was closed. Damall certified to the IRS that the property involved in the estate account had not been involved in any transfer or change in ownership. Documents reflecting this certification were filed into evidence. The properties involved in Mrs. Darnall’s estate were precisely those properties allegedly exchanged in the transaction of January 7, 1980.[3] Darnall’s attorney, Armentor, additionally drafted a will for Damall in the summer of 1980. There was no mention of J.K. Dar- *1324 nail, Inc. stock nor of any prior sales or transfers of Damall’s property.
The documents relied on by appellants are ambiguous and uncertain in their authenticity. Although referred to as a “cash sale,” the alleged transfer dated January 7, 1980 was an exchange rather than a sale. “An exchange takes place by the bare consent of the parties.” La.C.C. art. 2661. The rules governing a contract of sale apply to a contract of exchange. La.C.C. art. 2667. “A transfer of immovable property must be made by authentic act or by act under private signature.” La.C.C. art. 1839. No authentic act was introduced into evidence at the trial on the merits. The record contains copies of several acts; these copies include Mr. Damall’s signature in different forms; one act is two pages in length, another is a one-page document which appears to be an overlap of the two-page document. Additionally, the copies have different notations in handwriting and in type, and contain variations in spelling.
The “cash sale” does not describe the property to be exchanged, but instead refers to “exhibit X,” which is neither par-aphed nor otherwise identified. Exhibit X was not introduced at trial but is included in the record and, as in the case of the “cash sale,” is comprised of different forms and different lengths. As such, we find it difficult to ascertain which document or documents appellants purport to be authentic.
As a general rule, parol evidence is inadmissible to vary or negate the context of an authentic act. As an exception to this rule, an act made through a vice of consent is not authentic and can have no evidentiary effect. See Comment, La.C.C. art. 1835. The testimony and evidence introduced at trial was submitted without objection. Assuming, arguendo, that a proper objection had been voiced, the law is clear that the evidence was properly admitted. La.C.C. art. 1848 states, as follows:
“Testimonial or other evidence may not be admitted to negate or vary the contents of an authentic act or an act under private signature. Nevertheless, in the interest of justice, that evidence may be admitted to prove such circumstances as a vice of consent, or a simulation, or to prove that the written act was modified by a subsequent and valid oral agreement.”
Parol evidence is also admissible to show that the sale did not take place and that the property continues to belong to the pretended vendor. See Mitchell v. Clark, 448 So.2d 681 (La.1984); Blackwell v. Nagy, 122 So.2d 903 (La.App. 1 Cir.1960); Hodge v. Hodge, 151 La. 612, 92 So. 134 (La.1922). Parol evidence is also admissible to show the true intent of a party. Baker v. Baker, 209 La. 1041, 26 So.2d 132 (La.1946).
Appellee has clearly alleged in the petition that Damall had no intent to transfer his property. “Interpretation of a contract is the determination of the common intent of the parties.” La.C.C. art. 2045. Consent may be vitiated by error, fraud, or duress. La.C.C. art. 1948. Whether Dar-nall was a victim of error, fraud, or duress is unknown and unfortunately Damall is now deceased and unavailable to testify regarding the circumstances surrounding the alleged “exchange.” Appellee is restricted to the introduction of evidence regarding Damall’s manifestations of intent. These manifestations clearly show no intent on behalf of Damall to transfer control or ownership of his property. The record discloses that numerous documents were executed on January 7, 1980, primarily in conjunction with the incorporation of J.K. Damall, Inc. This fact, together with the ambiguities in the alleged “authentic acts” and attached exhibits, when viewed in light of Damall’s manifestations of intent, are sufficient to show a lack of intent and/or consent to the alleged sale or exchange.
Levy’s actions also raise questions as to whether there was any consent to the alleged transfer. The “cash sale” was not recorded for an undetermined amount of time after execution. Additionally, the corporation carried on no business until after Damall’s injury and resulting interdiction. After this point in time, Mr. Damall’s assets were almost immediately encumbered by J.K. Damall, Inc. to the tune of approxi *1325 mately $14,000,000. In May of 1984, J.K. Darnall, Inc. filed a petition for bankruptcy-
We agree with the trial court’s determination that the evidence overwhelmingly supports the proposition that no sale of Mr. Damall’s property took place on January 7, 1980.
ASSIGNMENT OF ERROR NO. 9
By this assignment of error, appellants allege that the judgment rendered June 2, 1986 and signed on June 11, 1986, at Baton Rouge, Louisiana is void ab initio because it was not signed in open court; it was not signed in the parish of Iberia; and further, the appellants were not served with a copy of the judgment.
La.C.C.P. art. 1911 previously required that all final judgments were to be read and signed by the judge in open court. This provision was amended in 1974 and now merely requires that every final judgment shall be signed by a judge. La.C.C.P. art. 1912 provides that a final judgment may be signed in any parish within the state. Regarding appellants’ contention that they were not served with a copy of the judgment, La.C.C.P. art. 1913 sets forth the instances when notice of judgment is required. When, as in the present case, the court immediately pronounces judgment, a party may make a request of record for notice of the date when the judgment is signed and, upon such request, the clerk shall mail such notice to the party requesting it. The record reflects that no request for such notice was made in this action and, as such, we find this assignment of error without merit.
CONCLUSION
For the reasons set forth above, the judgment of the trial court is affirmed.
Costs of this appeal are to be assessed against appellants, J.K. Darnall, Inc. and John B. Levy.
AFFIRMED.

. Various third party banks and financial institutions later intervened to assert security interests allegedly obtained from J.K. Damall, Inc. and Mr. Levy. These demands, as against the plaintiff, were settled and severed on the day of trial and are not now before us.

. At trial, Mr. Riley, attorney for plaintiff, stated, on the record, that there had been no release of a stay order as to the defendant, John Levy. Although the record does not disclose a viable stay order in effect as to John Levy, the record shows that J.K. Darnall, Inc. was the sole defendant being proceeded against on June 2, 1986. Obviously, J.K. Darnall, Inc. was not incarcerated at the time of trial and could have retained substituted counsel to represent it. This was not done, and John Levy remained attorney of record representing J.K. Darnall, Inc.

 The assignments of error have been taken out of the order assigned by appellants so as to re-arrange them so that our discussion of them will have more fluidity of continuity.

. Although not formally introduced into evidence at trial on the merits, the record included, in connection with plaintiff’s earlier motion for summary judgment, Darnall's 1980 federal and state income tax returns. These returns reflect that considerable income was earned in that year and reported by Darnall individually. Although plaintiff attempted, through discovery, to obtain tax returns for J.K. Darnall, Inc. for this same period, they were not successful and the record contains no such returns; strongly indicating that there were no such returns filed; a further indication of lack of intent by Damall to transfer his property to the corporation.