WILLIAMS, Judge.
Plaintiff, Peter Brady, was diagnosed on June 16, 1986, as suffering from grain asthma. He allegedly contracted this breathing condition while he loaded grain when employed as a longshoreman during the period of 1944 to 1981. On June 9, 1987, he filed suit against various riverfront grain elevators and against the companies which manufactured and sold the respiratory protection that he wore while working on the riverfront. In response, defendants filed a peremptory exception which raised the objection of prescription. Following a full hearing, the exception was maintained. The court’s reasons for judgment state the evidence preponderates that prior to 1984 and as early as 1978, Brady knew his breathing condition was aggravated by and/or related to grain dust. As a consequence, under both Louisiana and maritime law, the court found Brady’s cause of action had prescribed.
On appeal, Brady claims the trial court erred in maintaining defendants’ exception because the disputed factual issues should have been resolved by a jury and because the running of prescription did not commence until he was diagnosed as suffering from grain asthma. As we disagree with these contentions, we affirm the trial court’s judgment sustaining the exception and dismissing the suit as to all defendants.
STATEMENT OF FACTS
Peter Brady filed suit on June 9, 1987 against Bunge Corporation; Public Grain Elevator of New Orleans; St. Charles Grain Elevator, Inc.; Dockside Elevators, Inc.; Cargill, Inc.; Reserve Elevator Corporation; Continental Grain Company; Farmer’s Export Co-op; Mississippi River Grain Elevator, Inc., n/k/a Ferruzzi U.S.A., Inc.; Sears, Roebuck and Company and American Optical Corporation.[1] His petition asserts that he was employed by T. Smith & Sons Stevedores and other stevedoring companies during the period of 1944 through 1981. He asserts that in the course of his employment, he came into contact with grain and other harmful dusts which were being unloaded from the defendant grain elevators onto the vessels on which he worked. Brady asserts that his job was to shovel grain into the hull of the vessel and, after grain elevators were mechanized, to hold and direct a blower which spread the grain into the hull of the vessel. He claims defendant grain eleva *348 tors are liable to him because they knew the dangers caused by exposure to grain dust yet failed and refused to warn him of the dangers, and withheld said information. The petition also claims that defendants Sears and American Optical are liable to him because they manufactured and/or sold the defective masks which he wore while loading grain.
Defendants separately filed numerous peremptory exceptions, all raising the objection of prescription. By joint stipulation, the parties agreed that if one of the exceptions was granted, plaintiffs suit would be dismissed in its entirety as to all parties. On October 24, 1989, the trial court signed its initial judgment, referring the objection of prescription to the merits or to trial limited to live testimony of the issue of prescription.
On November 2, 1989, defendants motioned to set the suit for a trial limited to the issue of prescription. Brady opposed the motion asserting that, as trial of the merits was to go forth in less than three months, a trial limited to the issue of prescription would not save time or expense. However, he did not object to a trial before a judge or claim to be entitled to a trial by jury on the exception.
The court set the exception for trial on January 6 and 24, 1990. Defendants’ first witness was Dr. Dominic Arcuri, an expert in Family Medicine. While he was attending LSU Medical School in 1978, Dr. Arcuri worked at Montelepre Hospital taking the medical history of patients. He testified that on January 10, 1978, he took Brady’s medical history when he was being admitted for a repair of an incisional hernia. Dr. Arcuri identified the medical report that he made during his examination of Brady and he verified that the informational contents of the history would have been provided by Brady. He attested that in the section of the case history designated as review of systems, i.e., respiratory system, Brady “admitted to being short of breath; history of emphysema, and a history of coughing at work.” He testified that the words “grain dust” were written in parentheses.
Dr. Albert H. Hyman, an expert in cardiology, was defendants’ second witness. He testified that he was on staff at Mercy Hospital in March 1984. At the request of Brady’s regular treating physician, he performed a consultation examination of Brady on March 27, 1984. He identified the Mercy Hospital record of the consultation. Dr. Hyman testified that when he does a consult,
It is [his] habit to go in the room without looking at the [patient’s] chart at all because what is really wanted is an independent opinion, so [he goes] in the room ... explainfs] why [he is] there and then write[s] down the — what the patient tells [him] as related to the question at hand.
Dr. Hyman then read the following from the Mercy Hospital case record on Brady:
“Patient sustained posterior — a posterior scar one week ago. Apparently uncomplicated but had two scars of what appears to be ventricular flutter at 325 breaths per minute.” That is the cardiogram.
“Had perhaps two bouts in three minutes. Patient does not have any recollection except for fast beat. No pain with it. Patient says coughing caused it to pump. He has emphysema for fifteen or twenty years which he attributes to smoking and being around grain in shipping.”
In response to direct inquiries, Dr. Hy-man affirmed that Brady told him he attributes his coughing to smoking and to being around grain in shipping.
Next, defendants introduced into evidence the January 2, 1990 deposition of Dr. Louis Harkey which had been taken for the purpose of perpetuation at the trial. Dr. Harkey, who .lives in Jackson, Mississippi, testified that he is a medical doctor and has completed residencies in neurosurgery and spinal surgery. While he was attending LSU Medical School, he worked at Monte-lepre Hospital. He said his externship involved performing after-hours laboratory examinations and taking admission histories and physicals. Dr. Harkey identified an admission history report that he made *349 of Brady on May 31,1981, when Brady was being admitted into Montelepre.
Dr. Harkey read from the report the following remarks: “ 'Patient has a history of emphysema and shortness of breath’— or shortness of breath — ‘times several years, secondary to smoking one to two packs per day for twenty years, and occupationally inhaled debris.’ ” In the social history section of the report, Dr. Harkey admitted the report states “works at T. Smith & Sons on the river. Loads Grain. Retiring July 14th.” Thereafter, Dr. Har-key clarified that it was unlikely that Brady had used the words “occupationally inhaled debris.” He stated those words would have been his interpretation of what Brady had said. He testified that those words in combination with what was written in the social history section, “implies the inhalation of grain dust.” He informed the court that if he had gathered information from prior hospital records which indicated Brady had emphysema secondary to smoking and from inhalation of grain dust at work, he would have confirmed the prior history with Brady.
The third witness, Charles Egan, Funeral Director of Leitz-Egan Funeral Home, testified that a wake was held in the Leitz-Egan Funeral Home on August 14, 1984, for a Mr. Coopersmith.
Next, Brady testified. He said he has a ninth grade education and was employed as a longshoreman from 1944 until his retirement in 1981. Elaborating on his illness, he stated he has had problems with shortness of breath for 15 to 20 years. He admitted that when he was working, he would experience shortness of breath as a result of inhaling dust from grain, soy, corn and wheat, and he would start “spitting up dust.”
Brady admitted to attending the wake of a former longshoreman, Coopersmith, in the summer of 1984 and to speaking with another longshoreman, Thomas Chandler. Brady confirmed that, during the summer of 1984, Chandler told him that he experienced shortness of breath as a result of loading grain, he had seen an attorney [Forst], and suggested he see his attorney who would then refer him to an allergy specialist [Dr. Wilson].
Brady said he first learned his breathing problems were caused by grain dust, years after he quit smoking, when he was working in grain and his breathing problems returned.[2] Brady claimed that during the ten years he was treated by Dr. Schillesci, he was never told his breathing problems were caused by grain dust. Instead, he was told his problems were caused by his smoking. He said Dr. Wilson was the first to diagnose that he had grain asthma.
In opposition to the exception, Brady called Dr. Merlin Robert Wilson, Jr., a specialist in allergy and rheumatology. He testified he first examined Brady on June 6, 1986, with reference to the possibility that he suffered from asthma precipitated by grain dust. He distinguished asthma from emphysema. The former he defined as a reversible airway disease, while the latter he defined as an irreversible airway disease. He testified the results of the tests he performed on Brady showed he “had definite evidence of reversible airway disease” and he had grain allergies. His medical report indicated Brady had told him “that in addition to having shortness of breath he would also occasionally experience itching, burning of the eyes and a running nose.” Dr. Wilson confirmed these symptoms would have manifested themselves during Brady’s exposure to the dusts. He testified that if he had examined Brady in 1984, he probably would have made the same diagnosis as he made in 1986.
The concluding witness was Dr. Salvador Schillesci, a physician who practiced internal medecine until his retirement on May 1, 1989. Brady was his patient from 1972 until 1984. He testified he treated Brady *350 for emphysema which was partially caused by his smoking. In the early 1970’s, Dr. Schillesci knew Brady smoked 2 or 3 packs of cigarettes a day. He also knew Brady worked on the riverfront, although he did not know any of the particular circumstances of his work environment.
Dr. Schillesci said he was the admitting physician when Brady was hospitalized at Montelepre on January 10, 1978, and again on May 31, 1981. He confimed that by 1978 to 1984, he was “pretty sure” Brady was exposed to grain dust, that this exposure was a partial cause of his shortness of breath and that he advised Brady of this opinion. In response to the court’s inquiry, he confirmed it was more probable than not that he told Brady prior to January 1, 1984 that his problems with emphysema or his breathing problems were related to grain dust.
The judgment sustaining defendants’ exception and dismissing plaintiff’s suit at his cost was signed on January 26, 1990. Written reasons designate that regardless of whether maritime or Louisiana law applies, the evidence “which includes hospital records and the testimony of Drs. Arcuri, Hyman and Harkey clearly preponderates that prior to 1984 and as early as 1978, Peter Brady knew that his breathing problems were related to smoking and grain dust.” The court commented that the testimony of Brady’s regular treating physician, Dr. Schillesci, did not contradict this conclusion. The court stated that it attached no significance “to the testimony that grain dust does not cause emphysema, only asthma. ... Mr. Brady knew that what he had was aggravated and or related to grain dust.”
For the first time, on January 26, 1990, Brady requested a jury trial on the issue of prescription in his post-trial memorandum. The request apparently was denied. Thereafter, Brady appealed the trial court’s judgment of January 26, 1990.
DEFENDANTS’ OBJECTION OF PRESCRIPTION
Brady’s initial claim is the trial court usurped the power of the jury and, therefore, erred by deciding the issues of fact and credibility involved in the resolution of the objection of prescription. We find this contention meritless.
In Duhon v. Lafayette General Hospital, 286 So.2d 166, 169 (La.App.3d Cir. 1973), the court held that the plaintiff is not entitled to a trial by jury for the trial of an exception raising the objection of prescription. In any event, Brady failed to request a trial by jury in his opposition to defendants’ Motion to Set the Suit for Trial Limited to the Issue of Prescription, and he did not object to the judge sitting as trier of fact at the trial of the exception on January 6 and 24,1990. He first raised the complaint in his post-trial memorandum on January 26, 1990, the date on which the trial court issued its written judgment sustaining the exception. Thus, even if he were entitled to a jury trial, by his failure to object at the time of trial about the lack of a jury and by proceeding to try the exception before the court, he waived the objection which precludes him from asserting the complaint on appeal. LSA-C.C.P. art. 1635. Van Meter Drilling Co. v. Kubelka, 544 So.2d 547 (La.App. 5th Cir.1989); Babin v. Cole, 419 So.2d 1283 (La.App. 5th Cir.1982), writ den., 423 So.2d 1181 (La.1982).
Brady further claims he was ignorant of the critical facts which support his cause of action and which commence the running of prescription until he was diagnosed as suffering from the distinct illness of grain asthma after June 16, 1986. We disagree.
Delictual actions in Louisiana are subject to a liberative prescription of one year, commencing to run from the day injury or damage is sustained. LSA-C.C. art. 3492. Jurisprudence interprets this rule to mean that prescription commences on the date the injured party discovers or should have discovered the facts upon which the cause of action is based. Griffin v. Kinberger, 507 So.2d 821 (La.1987); Lott v. Haley, 370 So.2d 521 (La.1979); Strata v. Patin, 545 So.2d 1180 (La.App. 4th Cir. 1989), writs den., 550 So.2d 618 (La.1989). The plaintiff who is ignorant of the facts which support his cause of action will not *351 have his cause prescribed as long as his ignorance is not willful, negligent or unreasonable. Young v. Clement, 367 So.2d 828 (La.1979). Prescription does not begin to run at the earliest possible indication that plaintiff may have suffered some wrong, but rather begins to run when plaintiff has a reasonable basis to pursue his claim against a specific defendant. Jordan v. Employee Transfer Corp., 509 So.2d 420 (La.1987).
Absent manifest error, the trial court’s reasonable factual findings, derived from its evaluation of a mixture of deposition and live testimony, will not be disturbed on appeal. Sistler v. Liberty Mutual Ins. Co., 558 So.2d 1106 (La.1990). The trial court determined Brady had actual or constructive knowledge that his breathing problems were aggravated by and/or related to grain dust prior to 1984 and as early as 1978. The trial court did not manifestly err in rendering this conclusion.
The record supports the finding that Brady had knowledge of his injury (his breathing problem) and its cause (smoking and inhalation of grain dust) prior to his retirement in 1981. The 1978, 1981 and 1984 hospital records from Montelepre and Mercy Hospitals, in combination with the testimonies of Drs. Arcuri, Hyman and Harkey, established that Brady associated his shortness of breath and coughing to his exposure to grain dust when he was working. The court’s time assessment of Brady’s knowledge was also supported by the testimony of Dr. Wilson who claimed Brady told him he would occasionally experience itching, burning of eyes, and a profusely running nose when he worked with grain. Brady’s trial testimony provided additional support for the conclusion as he testified he first learned his breathing problems were caused by grain dust, after he stopped smoking but when he was still “working in grain.”
The evidence at trial established Brady knew the causal connection between his exposure to grain dust and his breathing problems as early as January 10, 1978. Brady revealed his knowledge of these critical facts during his interview with Dr. Arcuri. Thus, the liberative prescriptive period of one year commenced running on January 10, 1978, and Brady’s cause of action was prescribed by the time he filed suit on June 9, 1987.[3] LSA-C.C. art. 3492. A specific diagnosis of grain asthma was not needed as a precursor to the commencement of prescription. Brady was aware that his breathing problems were related to his exposure to grain dust. He was, therefore, unreasonable and negligent in failing to timely file suit against defendants after he became aware of this association.
For the reasons assigned, the judgment sustaining defendants’ peremptory exception raising the objection of prescription and dismissing plaintiff’s suit as to all defendants is affirmed. Plaintiff is to bear all costs of the appeal.
AFFIRMED.

. On October 2, 1987, Brady dismissed all claims, without prejudice, against Reserve Elevator Corp., reserving all rights against the other defendants. St. Charles Grain Elevators, Inc., settled with Brady in full on December 5, 1989.

. Mr. Forst: Could you tell the Court when you first learned that your breathing problems were caused by grain dust?
Mr. Brady: Well, it was after I stopped smoking, years after I stopped smoking I still was working in grain and my breathing started coming back hard on me again and I was notified — someone told me to go to talk to you and go see a grain analyzer, a doctor.

. Brady’s cause of action is also time barred under the three year statute of limitations of general maritime law. 45 U.S.C. § 56. Clay v. Union Carbide Corporation, 828 F.2d 1103 (5th Cir.1987).